Gertrude **DECKER**, Virginia **Decker Pratt, Individually, and Virginia Decker Pratt, as Guardian and Trustee for Coleman Simms Pratt, Petitioners,**

v.

**UNITED STATES of America, Respondent.**

No. 86–396–CR–T–17.

United States District Court, M.D. Florida, Tampa Division.

Nov. 10, 1993.

---

Richard Carter, Bradenton Beach, FL, for petitioners.

Patricia Kerwin, Asst. U.S. Atty., U.S. Atty. Office, Tampa, FL, for respondent.

### ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on claims of Gertrude Decker and Virginia Decker Pratt, individually, and, as Guardian and Trustee for her son, Coleman Simms Pratt, a minor, to certain real and personal property which has been forfeited to the United States pursuant to plea agreements with Lester Clark Dean and Michael Giltner and pursuant to 21 U.S.C. § 853. Petitioner Virginia Pratt, as guardian and trustee for Coleman Pratt, claims an interest in real property known as The High Seas Restaurant based on assertions that he holds a mortgage lien on the property (High Seas Petition). Petitioners Decker and Virginia Pratt claim an interest in real property known as The Skyline Bar

and in Florida Alcoholic Beverage License No. 51–128, Series 4–COP, based on assertions that they hold a mortgage lien on the properties (Skyline Petition). The Court held an evidentiary hearing on both petitions on October 7, 1992.

## FINDINGS OF FACT [1]

The Court makes the following findings of fact regarding these petitions, based on the evidence presented at the hearing:

*High Seas Petition*

1. Virginia Decker Pratt was married to Jerome Pratt, a lawyer, who died August 28, 1984. Mrs. Pratt was appointed trustee for the estate, and is guardian, of Coleman Simms Pratt.

2. Michael Giltner and Lester Clark Dean were drug traffickers who hired Jerome Pratt as their lawyer. Giltner and Dean have admitted giving Pratt hundreds of thousands of dollars to launder in the seventies and early eighties. Giltner stated that Pratt never gave him an accounting of the money. Lester Clark Dean is the stepson of Leroy Burns. Myrtice Burns, who died in 1991, was his mother.

3. Michael Giltner stated that one common method Pratt utilized to launder money was to purchase property and pay for it in full. Pratt would then execute a false mortgage when, in fact, no money had been loaned on the property. Pratt acted as attorney in all of the transactions. He prepared, supervised execution of, and handled recordation of all the pertinent documents.

4. On June 15, 1979, a mortgage deed was recorded. It had allegedly been executed on November 15, 1978, approximately seven months earlier, by Leroy and Myrtice Burns to Jerome Pratt. (Petitioner's Exhibit No. 1). The mortgage was purportedly secured by some, or all, of The High Seas Restaurant property. The mortgage carried an attached promissory note, of even date, in the amount of $75,000.00. The mortgage listed Jerome Pratt as the preparer. No explanation was offered for the delay in recording.

5. Mrs. Pratt contends that the consideration for this mortgage was legal services rendered by Jerome Pratt to Leroy Burns in connection with the High Seas Restaurant. Mrs. Pratt proffered no documentary evidence which supported this claim.

6. Jerome Pratt was largely responsible for the hiring and supervision of those individuals and entities that constructed the High Seas Restaurant. Leroy Burns had some role in this process. Although the extent of Burns participation in the construction process is not entirely clear, it was apparently less than Pratt's participation. Burns and Pratt acted in concert in obtaining bank loans for the acquisition of the land and the construction and furnishing of the building. No documentary evidence was introduced to suggest that there were any payments made on the alleged $75,000.00 Burns to Pratt mortgage. Nor is there any evidence of any efforts to collect or foreclose on the mortgage by Mr. Pratt.

7. Leroy Burns testified that he never received any legal bills from Pratt and understood that Pratt was to be paid by By–Gil, Inc., the lessee of the High Seas Restaurant.

8. Jerome Pratt had Leroy Burns' power of attorney to sign documents. Burns contends that he sometimes was requested by Pratt to sign blank documents.

9. Burns testified that Pratt never loaned $75,000.00 to either he nor his deceased wife, Myrtice, and furthermore, that the Burns' did not owe Pratt any fees for legal services.

10. On October 18, 1983, two deeds and a mortgage were recorded which reflected the sale of the High Seas Restaurant to Robert P. Fusco. All of the documents showed October 4, 1983 as the date of execution. The first document was a quit-claim deed from By–Gil, Inc. to Fusco. (Petitioner's Exhibit No. 3). It was signed by Jerome Pratt as "By–Gil, Inc. ex V Pres." The second document was a warranty deed from Leroy and Myrtice Burns to Hi Seas Rest., Inc., a corporation owned by Fusco. (Petitioner's Exhibit No. 6). This deed was given subject to the alleged $75,000.00 Pratt mortgage.

---

1. This Court notes that this order was prepared without the benefit of an official transcript as one

was not provided by either party, therefore, no citations to the record are included.

However, it was not signed by the Burns'. It was signed by Jerome Pratt as attorney-in-fact for the Burns'. Burns testified that he and Myrtice were away visiting a sick relative at the time this mortgage was allegedly executed.

11. There was also a mortgage from Fusco's corporation and Fusco, individually, to Leroy and Myrtice Burns and By–Gil, Inc. in the amount of $1,775,000.00 which represented the balance of the purchase price less a down payment, by Fusco, of $225,000.00. (Petitioner's Exhibit No. 6). The mortgage expressly was subordinated to, inter alia, the alleged $75,000.00 Burns mortgage.

12. On March 4, 1986, a document entitled "Addendum Mortgage Deed Dated November 15, 1978," was recorded. The document purported to be a satisfaction of the alleged $75,000.00 Burns mortgage. (Petitioner's Exhibit No. 2). The document reflects that the source of funds for the payoff was the down payment made by Fusco for the High Seas Restaurant. It further states:

> Thense (sic) ten percent (10%) to be received by Jerome Pratt, Attorney, and all legal heirs of the estate for the amount of Nine Hundred and Fifty Dollars ($950.00) for a period of twelve (12) months after the first day of March, Nineteen Hundred Eighty Four (1984) from By–Gil, Inc., leasors (sic) of High Seas Restaurant, for any and all legal fees that may occur.

13. The signature on the document purports to be that of Jerome Pratt and is witnessed by Clark Dean "for By–Gill, Inc. (sic)." Mrs. Pratt alleges that the signatures on both pages of the addendum are forgeries. She acknowledged that a Jerome Pratt employee, Betty Valentin, now deceased, commonly signed Jerome Pratt's signature, however, the alleged forgery does not appear to be the same style of forgery as Ms. Valentin's.

14. The government introduced an inventory of the estate of Jerome Pratt, dated January 4, 1985, which does not list the alleged Burns $75,000.00 mortgage. (Government's Exhibit No. 1).

*Skyline Petition* [2]

15. Gertrude Decker is the deceased mother of Virginia Decker Pratt. Mrs. Pratt is heir to Decker's Estate.

16. Gertrude Decker owned real property described as Lots 104 and 105 of Washington Park Subdivision (Skyline real property) and a Florida Alcoholic Beverage License No. 51–128, Series 4–COP (beverage license) for a number of years.

17. A warranty deed was executed on an unknown date in December, 1977, by Decker and Mr. and Mrs. Pratt to By–Gil Inc., a Florida corporation whose principals were Arlene Bykeefer Dean and Michael Giltner, for the Skyline real property. (Petitioners Exhibit No. 1). The instrument was prepared by Jerome Pratt. The day of the month of the making of the deed was left blank as well as the date it was "notarized." The deed was not recorded until May 11, 1978.

18. On May 11, 1978, a mortgage deed was recorded. It had been executed on an unknown date in 1977 by By–Gil, Inc. to Decker and Mrs. Pratt. (Petitioner's Exhibit No. 2). The mortgage was purportedly secured by the Skyline real property and the beverage license. The month and day of the execution of the deed was left blank. At the time of recording, the deed contained an attached promissory note in the amount of $28,000.00. The date on the note was February, 1978, but the day was left blank. There were at least four other blanks not filled in throughout the instrument. No explanation was proffered for the difference in dates between the note and the mortgage, the delay in recording, or why the mortgage was executed with a significant amount of missing information. Mrs. Pratt stated that Jerome Pratt handled everything.

19. On January 25, 1979, a re-recording of essentially the same instrument occurred. (Petitioner's Exhibit No. 3). This mortgage, however, had a promissory note attached in the amount of $125,000.00 instead of the $28,-000.00 note. The new note's preparation date was reflected as, simply, December,

---

**2.** All findings of fact which are relevant from the preceding discussion are readopted in this section of findings of fact, specifically, but not exclusively, Nos. 1, 2 and 3.

with no day or year. The date of execution was reflected as December 19, 1977. Some of the items previously left blank had been filled in. A note at the bottom of page one indicates that the mortgage was re-recorded because an incorrect note ($28,000.00) had been erroneously attached during the first recording. Mrs. Pratt asserted that the $28,000.00 note was for fixtures and furnishings, and that the $125,000.00 note was for the real property. However, the re-recorded mortgage shows that the $125,000.00 secures the real property, fixtures, furnishings, liquor license, etc. No mention is made of the $28,000.00 amount. Nothing has been proffered to show that By–Gil, Inc. agreed to the re-recording of this apparently altered document.

20. Michael Giltner testified that the business and inventory for the restaurant were paid for with cash satisfying all mortgages.

21. Another mortgage was purportedly executed in January 2, 1979, by By–Gil, Inc. to Jerome Pratt for $75,000.00 secured by the Skyline property and the beverage license. (Government's Exhibit No. 2). Mrs. Pratt contends that she received mortgage payments which reduced the balance to $72,000.00 or $67,000.00. Mrs. Pratt produced no documents, such as tax returns or bank statements, to suggest receipt of these amounts. She stated that she kept records of the payments, but she failed to introduce them.

22. Mrs. Pratt introduced into evidence a printed amortization schedule (Petitioner's Exhibit No. 4) showing the principal and interest payments on a $125,000.00 loan over fourteen years at a fixed payment of $1,200.00 per month. This was the only documentation introduced by Mrs. Pratt, other than the alleged mortgages themselves, which purportedly showed some relationship between the $125,000.00 and the repayment of actual consideration.

23. A warranty deed was introduced which contained an execution date of September 23, 1984, and which transferred the Skyline property to Gilbert J. Frieler and others. (Petitioner's Exhibit No. 5). It was recorded on December 4, 1984. The deed states that it was prepared by Jerome Pratt, who had died on August 28, 1984.

24. A UCC–1 financing statement was introduced which was recorded on December 4, 1984, listing Jerome Pratt as the preparer, although he had been dead for over three months. (Petitioner's Exhibit No. 6).

25. A mortgage deed, from Gilbert Frieler to By–Gil, Inc., dated September 23, 1983, was introduced. (Petitioner's Exhibit No. 7). The notary date is September 15, 1983. These two dates are nearly a year **before** the date the warranty deed was allegedly executed. The mortgage (Petitioners Exhibit No. 7) and the deed (Petitioner's Exhibit No. 5) were both recorded on the same date (December 4, 1984), over three months after Jerome Pratt, the preparer, had died.

26. Gilbert Frieler failed to make mortgage payments and By–Gil, Inc. foreclosed in the property. (Government's Exhibit No. 1).

## DISCUSSION

Petitioners bring this action to adjudicate third party interests in properties which have been ordered forfeited by this Court, pursuant to plea agreements between the government and Lester Clark Dean and Michael Giltner (Docket Nos. 227 and 422), by virtue of, and pursuant to, 21 U.S.C. § 853, governing criminal forfeitures. Because plea agreements are involved in the instant action, the law of contract governs the overall forfeitures. However, third party interests are determined under 21 U.S.C. § 853(n)(6).

Section 853(n), entitled "Third party interests," subparagraph (6) states:

(6) If after the hearing, the court determines that the petitioner has established by a *preponderance of the evidence* that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which

gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination. (emphasis added) 21 U.S.C. § 853(n)(6)(A) and (B).

■ Petitioners carry the burden of proof, and, in order to prevail in this proceeding, must show, by a preponderance of the evidence, that they have an ownership interest in the property, and that the ownership interest is superior to the government's interest, which vested at the commission of the crimes, which were admitted to by the defendants in their plea agreements. To show superior interest, petitioners must show that these alleged mortgages are legitimate interests which were received for consideration and not sham transactions which had as their purpose the concealment of drug proceeds.

■ Alternatively, petitioners, using the same burden and standard of proof, must show that they were bona fide purchasers *for value,* who at the time of purchase were reasonably without cause to believe that the property was subject to forfeiture. Actual lack of knowledge of forfeitability is not enough. "The proper test to be applied under the statute is not merely whether the petitioner[s] had knowledge of forfeitability of the asset but whether the petitioner *reasonably* held the belief that the property was not subject to forfeiture." (emphasis added) *United States v. Reckmeyer,* 836 F.2d 200, 204 (4th Cir.1987).

The petitioners have submitted documentary evidence in support of their claims. Because they must show by a preponderance of the evidence that these alleged interests exist, petitioners have also provided oral testimony, in support of their claim, from several individuals. In order for this Court to make a determination, then, it is necessary to assess the credibility of the documentary evidence and the oral testimony. The evidence which is found to be credible must then be weighed to determine whether it meets the preponderance test set forth above.

■ Petitioners seem to contend that the documentary evidence presented, creates a rebuttable presumption of their interests, which the government has the burden of refuting. Petitioners, however, misunderstand the applicable standard here. Asserting third party interests in a criminal forfeiture proceeding requires the petitioners to assume the burden of proving the validity of their claim.

*High Seas Petition*

■ The evidence presented regarding this petition is unconvincing. Jerome Pratt was a knowledgeable and experienced attorney. Yet, the mortgage here in question was prepared, executed, and recorded in a manner which was totally inconsistent with basic legal skills, ethics, and safeguards. When coupled with the lack of other proof that this was a legitimate mortgage transaction, the only reasonable explanation for these inconsistencies, is that the mortgage is a sham.

Leroy Burns alleges that Jerome Pratt had no authority to sign the mortgage on his behalf, and there has been no documentary or other evidence to the contrary. Why was the mortgage not recorded for seven months? Furthermore, if there was no big hurry to record the mortgage, why was it necessary for Mr. Pratt to use Burns' alleged power of attorney and sign the document on Burns behalf? Why didn't Pratt simply wait until Leroy and Myrtice Burns returned from their trip?

If the consideration for the alleged mortgage was, in fact, legal fees, why was there nothing in writing to substantiate this arrangement, i.e. a fee agreement? If Mr. Pratt felt the necessity to execute an unrecorded mortgage to protect earned fees, how much longer would it have taken to execute a two page fee agreement to backup the mortgage? Why were there no fee billings against the mortgage?

If the mortgage was legitimate, why was no evidence presented to show that it was ever reduced or that interest payments were

ever made? From the time the mortgage was allegedly executed, until the time the High Seas was sold to Mr. Fusco, approximately five years had passed. Yet, the balance on the alleged mortgage had never changed, despite the apparent fact that no interest payments were ever made. If Mr. Pratt was so careful an attorney as to protect his interests by executing this mortgage, why did he fail to take any steps to collect principal or interest until almost five years later, when the restaurant was sold to Fusco?

If this mortgage is legitimate, why was it not listed on the inventory of the estate of Jerome Pratt?

It is not necessary to reach the issue of whether the satisfaction of mortgage was a forgery, because this Court finds that the alleged mortgage was a sham.

*Skyline Petition*

The evidence presented regarding this petition is equally unconvincing. Again, the person or persons who prepared, supervised execution of, and recorded the pertinent documents did not display the reasonable care which would be expected of individuals with legal training, dealing with bona fide liens for hundreds of thousands of dollars. Once again, when coupled with the lack of other proof that these were legitimate mortgage transactions, the only reasonable explanation for these inconsistencies, is that the mortgages were shams.

Why was the alleged $28,000.00/$125,000.00 mortgage (first mortgage) not recorded for at least five months after it was executed? Why were many of the important dates left blank? How could a legitimate transaction, conducted by a lawyer, have concluded with an erroneous mortgage recording, to wit, an attached note which bore an amount which was **$97,000.00** less than the amount which was allegedly actually due? Why did it take over six months to discover this alleged error? Mrs. Pratt testified that $125,000.00 represented the amount for the real property and $28,000.00 represented the amount for fixtures and furnishings. If her testimony is true, why did the "re-recorded" note bear an amount of $125,000.00, while the mortgage indicated that it represented an amount which was inclusive of all of these

items. What happened to the $28,000.00 note?

Regarding the later alleged $75,000.00 (second mortgage), why was Mrs. Pratt unable to substantiate her claims that she had received payments against it? She stated that she possessed records of such payments, but offered no explanation for her failure to proffer them.

The only written evidence offered, whatsoever, which purports to serve as proof of repayment for either mortgage, is a printed amortization schedule reflecting the payments for a loan of $125,000.00 with a fixed payment of $1,200.00 per month. Such a schedule could have been easily printed by any garden variety personal computer. There is no evidence to show that the proffered amortization schedule was connected in any way to the first mortgage.

Petitioner points out that Michael Giltner, during cross examination could not explain why continuing mortgage payments were made if there was no mortgage. However, because petitioner has failed to offer any proof that these alleged mortgage payments were actually made, the argument fails to attain significance.

## CONCLUSIONS OF LAW

1. This is a proceeding to adjudicate the validity of Petitioners Gertrude Decker, Virginia Decker Pratt's third party interests in property known as the Skyline Bar and Florida Alcoholic Beverage License No. 51–128, Series 4–COP, and the validity of Petitioner Virginia Decker Pratt, as trustee and guardian of Coleman Simms Pratt's, interest in property known as the High Seas Restaurant.

2. Third-party interests under the agreement are determined pursuant to 21 U.S.C. § 853(n).

3. All right, title and interest vests in the United States upon commission of the act giving rise to forfeiture. 21 U.S.C. § 853(c).

4. Petitioners, Gertrude Decker, and Virginia Decker Pratt, individually, and as trustee and guardian of Coleman Simms Pratt, have failed to prove by a preponderance of

the evidence that they have a right, title or interest in the property which is superior to the government's.

5. Petitioners, Gertrude Decker, and Virginia Decker Pratt, individually, and as trustee and guardian of Coleman Simms Pratt, have failed to prove by a preponderance of the evidence that they were bona fide purchasers for value and reasonably without cause to believe that the property was subject to forfeiture.

## CONCLUSION

The Skyline Bar, Florida Alcoholic Beverage License No. 51–128, and The High Seas Restaurant were forfeited pursuant to plea agreements brought under the criminal forfeiture statutes, and petitioners Gertrude Decker, and Virginia Decker, individually, and as guardian and trustee for her son, Coleman Simms Pratt have failed to prove by a preponderance of the evidence either of the requirements contained in 21 U.S.C. § 853(n)(6). Accordingly it is

**ORDERED** that petitioners' claims be **denied** and the Clerk of the Court be **directed** to enter judgment of forfeiture for the United States of America and **against** petitioners Gertrude Decker, and Virginia Decker, individually, and as guardian and trustee for her son, Coleman Simms Pratt.

**DONE AND ORDERED.**