836 F.2d 200
 56 USLW 2391
 UNITED STATES of America, Plaintiff-Appellant,
v.
William J. RECKMEYER, Claimant-Appellee,
and
Christopher F. Reckmeyer; Robert Bruce Reckmeyer, Defendants.
UNITED STATES of America, Plaintiff-Appellee,
v.
William J. RECKMEYER, Claimant-Appellant,
and
Christopher F. Reckmeyer, Defendant.
UNITED STATES of America, Plaintiff-Appellant,
v.
REGINALD R. MILLER, INC., Claimant-Appellee,
and
Christopher F. Reckmeyer, Defendant.
 Nos. 86-5037, 86-5070 and 86-5089.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1987.
Decided Dec. 28, 1987.
 
 William G. Otis, Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Kent S. Robinson, Asst. U.S. Atty., Alexandria, Va., on brief) for plaintiff-appellant.
 Nina Jean Ginsberg (Zwerling, Mark, Ginsberg & Lieberman, P.C., Alexandria, Va., on brief), Thomas Vincent Monahan (Hall, Monahan, Engle, Mahan & Mitchell, Winchester, Va., on brief) for claimants-appellees.
 Before PHILLIPS, ERVIN and CHAPMAN, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 The government here challenges district court judgments exempting certain property from criminal forfeiture on petition by third parties pursuant to 21 U.S.C. Sec. 853(n).
 
 
 2
 Christopher Reckmeyer (Christopher) pled guilty to conducting a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848. In conjunction with his plea, Christopher agreed to forfeit to the United States virtually all of his assets, both discovered and undiscovered. After the district court accepted Christopher's plea and entered the order of forfeiture, several third parties successfully petitioned the court to modify the forfeiture order to exclude assets in which they claimed an interest. This appeal by the government concerns the petitions of William Reckmeyer and Reginald C. Miller, Inc.
 
 
 3
 We affirm the judgments in favor of each of these petitioners.
 
 
 4
 * William Reckmeyer
 
 
 5
 William Reckmeyer is the father of Christopher and Robert Reckmeyer. On September 20, 1980, William loaned Christopher $40,000 so that Christopher could purchase a parcel of real property known as the "Shelburne Glebe." The obligation was represented by an unsecured promissory note. The funds used to advance the loan came from William's legitimate business operations. On May 8, 1981, Christopher repaid $15,000 of the debt, leaving a balance of $25,000. When the balance came due on September 20, 1981, William told Christopher that he could keep the $25,000, interest-free, in exchange for an option to receive at some point in the future, at the original purchase price, $25,000 worth of land from the Shelburne Glebe property.
 
 
 6
 On January 6, 1984, William purchased from Christopher 146.2785 acres of land known as the "Orme property." As consideration, William executed a promissory note to Christopher and Christopher's wife, Nancy, for $112,500 and paid Nancy Orme, the previous owner of the property, $157,000 to satisfy the deed of trust executed by Christopher in the original purchase.
 
 
 7
 After the district court ordered the forfeiture of all of Christopher's accounts, the Shelburne Glebe, and the Orme property, William filed third-party petitions under 21 U.S.C. Sec. 853(n) seeking to recover $25,000 from the forfeited assets and exemption of the Orme property from the forfeiture order. He did not challenge the forfeitability of the $112,500 note on the Orme property. The district court granted both petitions, subject to William's payment to the government of the balance due on the $112,500 note.
 
 
 8
 Reginald C. Miller, Inc.
 
 
 9
 Reginald C. Miller, Inc., (Miller) imports and exports precious stones. Patrick Hendry, a co-conspirator in the criminal case, is Miller's sales manager.
 
 
 10
 On September 22 and November 16, 1984, Hendry delivered two gemstones "on memorandum" to Christopher. One stone was an oval blue sapphire weighing 4.49 carats valued at $11,250 and the second stone was an oval blue sapphire weighing 5.53 carats valued at $27,650. Under the memorandum agreements, title to the stones remained with Miller and Christopher could not sell, pledge, hypothecate or otherwise dispose of the gems without first receiving express permission from Miller. Assuming they had been sold, Miller billed Christopher for these two stones on November 20 and November 29, 1984, but Christopher never paid Miller for the stones. After finding that Hendry was the only Miller employee who was aware of Christopher's drug trafficking activities and that the stones had been sold, the district court awarded Miller $38,900, the value of the two stones, from the forfeited assets.II
 
 
 11
 Christopher's assets were forfeited in accordance with the provisions of 21 U.S.C. Sec. 853, which requires that persons convicted of engaging in a continuing criminal enterprise forfeit (to the government) all assets associated with or derived from the enterprise. Although Christopher at first consented to the forfeiture order as part of his plea agreement, he later challenged the forfeiture, asserting that (1) his consent was not voluntary because he did not realize that without his agreement the government would have to establish the forfeitability of each asset independently and (2) the factual basis for the forfeiture offered by the government was insufficient to support the court's acceptance of the forfeiture. The district court rejected that challenge and on an earlier appeal we affirmed, holding that Christopher's agreement to the forfeiture was knowing and voluntary and that there was a sufficient factual basis for the forfeiture.
 
 
 12
 On that earlier appeal we relied essentially upon 21 U.S.C. Sec. 853(d) which provides a rebuttable presumption that any property acquired during the course of the criminal enterprise is subject to forfeiture, and upon Sec. 853(a)(1) under which any proceeds or profits of the criminal enterprise are forfeitable. The government asserted in that earlier proceeding, without objection from Christopher, that Christopher had only insignificant legitimate income over the course of the conspiracy. It therefore appeared that all of the items at issue necessarily were purchased out of the proceeds of Christopher's illegal activity. On this basis alone we upheld the forfeiture of Christopher's assets against the direct challenge mounted in that proceeding. United States v. Reckmeyer, 786 F.2d 1216, 1222 (4th Cir.1986).
 
 III
 
 13
 The resolution of the claims presented here is controlled by 21 U.S.C. Sec. 853 of the Continuing Criminal Enterprise Act (CCE Act), which was enacted as part of the Comprehensive Forfeiture Act of 1984. Section 853 requires that persons convicted of engaging in a continuing criminal enterprise forfeit to the United States any property associated with or derived from the profits of the criminal enterprise. Under Sec. 853(c) the interest of the United States in forfeitable property "vests" "upon the commission of the act giving rise to the forfeiture." This "relation-back" provision allows the government to reach forfeitable assets in the hands of third parties at the time of conviction. The provision was designed to prevent defendants from escaping the impact of forfeiture by transferring assets to third parties. The rights of third parties who claim an interest in forfeited property are outlined in Sec. 853(n).[1] Subsection (n) provides the only means for third parties to establish their interest in forfeited property.
 
 
 14
 Under subsection (n)(2), once an order of forfeiture has been entered, any person asserting a legal interest in the forfeited property may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Subsection (n)(6) requires the court to amend the order of forfeiture of a petitioner demonstrates by a "preponderance of the evidence" that--
 
 
 15
 (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
 
 
 16
 (B) The petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.
 
 
 17
 Thus subsection (n)(6) protects only two classes of petitioners, those whose legal interests in the property were superior to the defendants at the time the interest of the United States vested through the commission of an act giving rise to forfeiture and "bona fide purchasers for value" without knowledge of the forfeitability of the defendant's assets. The district court's amendments to the forfeiture order can be sustained only if we determine that William Reckmeyer and Miller fall within one of the two classes of petitioners Congress intended to protect.
 
 IV
 
 18
 Disposition of William Reckmeyer's claim to the Orme property requires only a straightforward application of the terms of Sec. 853(n)(6)(B). To retain the Orme property, William must establish that he is a "bona fide purchaser for value of [a] right, title, or interest in the property," who, at the time of purchase, was reasonably without cause to believe that the property was subject to forfeiture. The government does not dispute William's status as a "bona fide purchaser" of the Orme property or contend that the purchase was not "for value." Instead, the government asserts that the district court's factual determination that William was reasonably without cause to believe that the Orme property was subject to forfeiture is clearly erroneous.
 
 
 19
 To support its assertion that William knew the Orme property was forfeitable the government presented the following evidence. William knew approximately one month before he purchased the Orme property that the proceeds of the sale of real property belonging to Christopher's brother, Robert, had been seized in a civil forfeiture action. He also knew that the seizure was related to a grand jury investigation of both Christopher and Robert. William had held a second trust on Robert's seized property securing a $25,000 loan to Robert. After the seizure, William was repaid the principal due on the loan, but not the interest. His efforts to collect the interest were unsuccessful.
 
 
 20
 William became aware that his sons were under investigation several months prior to the purchase of the Orme property. He was told by government agents that they were investigating his financial transactions with his sons, and he was told by Christopher that the investigations concerned tax problems. William testified that he had no knowledge of his sons' involvement with drugs or that any of Christopher's property might be forfeitable.
 
 
 21
 The district court found William to be a highly credible witness and concluded that at the time he purchased the Orme property he had no reason to believe that it might be forfeitable. This finding is amply supported by the record, and we find no reason to disturb it.
 
 
 22
 The government urges that because the district court based its conclusion largely on William's testimony, the court considered only William's subjective state of mind and not whether he reasonably had cause to believe that the Orme property was subject to forfeiture. As the government asserts, the proper test to be applied under the statute is not merely whether the petitioner had knowledge of the forfeitability of the asset but whether the petitioner reasonably held the belief that the property was not subject to forfeiture. The petitioner's testimony as to his actual knowledge and as to his understanding of events surrounding the forfeiture are nonetheless highly relevant to this inquiry. The district court's emphasis on this testimony does not suggest any impropriety in its analysis of the evidence.
 
 
 23
 The government urges that William's admitted knowledge that his sons were under investigation and that some proceeds from the sale of property owned by Robert had been seized compels, as a matter of law, the conclusion that William was not reasonably unaware of the forfeitability of the Orme property. We disagree. A reasonable person with the knowledge the government attributed to William would not necessarily conclude that all property owned by Christopher was forfeitable. The events known by William were susceptible to a number of interpretations. Understandably, he may not necessarily have assumed the worst from the limited information available to him. Indeed it would have required no small amount of imagination and parental mistrust to assume from knowledge of the investigation and seizure of some of Robert's funds that all of Christopher's assets were subject to forfeiture.
 
 
 24
 We therefore affirm the district court's ruling as to the Orme property.
 
 V
 
 25
 The remaining claims, William's claim for $25,000 and Miller's claim for the value of the unrecovered gemstones, require us to determine whether general creditors may qualify as third-party claimants under Sec. 853(n). Section 853(n)(2) provides that "any person ... asserting a legal interest in forfeited property" can bring an action to adjudicate his interest in the property. The government argues that this section limits standing to contest forfeiture to secured creditors who have a security interest in a specific forfeited asset. According to the government, unsecured creditors cannot meet the "legal interest" test imposed by the statute. We disagree.
 
 
 26
 The term "legal interest" is not defined within Sec. 853 so we must determine whether Congress intended to include the interest of a general creditor within the scope of that term. We begin with the "assumption that the legislative purpose is expressed by the ordinary meaning of the words used." Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). The Supreme Court has held that the term "interest" "comprehends all forms of real and personal property." Russello v. United States, 464 U.S. 16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). The Court referred with approval to Black's Law Dictionary's broad construction of "interest" as " '[t]he most general term that can be employed to denote a right, claim, title, or legal share in something.' " Id. at 21, 104 S.Ct. at 299 (quoting Black's Law Dictionary 729 (5th ed. 1979)). Black's Law Dictionary defines a "legal interest" as an "interest in property or in claim cognizable at law in contrast to equitable interest." Id. at 805. Thus the term "legal interest" encompasses all legally protected rights, claims, titles, or shares in real or personal property.[2]
 
 
 27
 Unsecured creditors have the right to bring any number of legal claims against the estates of their debtors to protect their right to recovery. Unsecured creditors may reduce their claims to judgment and thereby acquire a lien on all of the debtor's assets. This enforcement mechanism provides for the judicial enforcement of a legally cognizable right.
 
 
 28
 In some instances an unsecured creditor may be able to bring an action to protect her interest even before the obligation is due. For example, many states have statutes that allow an unsecured creditor to bring an action to void conveyances of the debtor that are made with the intent to hinder, delay, or defraud the creditor or which, although not made with malicious intent, impair the ability of the creditor to recover because the debtor did not receive value for the conveyance. See, e.g., Va.Code Ann. Secs. 55-80, 55-81. These statutes recognize the legal interest of an unsecured creditor in the estate of her debtor.
 
 
 29
 We conclude that unsecured creditors of persons whose property is subject to forfeiture have a "legal interest" in the debtor's property. This conclusion alone, however, does not assure unsecured creditors standing to challenge the forfeiture of a defendant's assets. Section 853 requires more than a showing of a legal interest in the debtor's property. It requires that the interest exist in the property subject to forfeiture. This second hurdle may well prove fatal to the claims of a number of general creditors. Although general creditors can claim an interest in their debtors' estates, they cannot claim an interest in any particular asset that makes up that estate.[3] That barrier has no impact on the claim of petitioners here, however, because, as the government concedes, the order of forfeiture reaches all the discovered and undiscovered assets of Christopher Reckmeyer and the government has seized all of his known assets. In practical terms Christopher's entire estate has been forfeited to the government. Because petitioners' interests necessarily lie within that estate, they meet the threshold qualification for relief by asserting a legal interest in the property subject to forfeiture.
 
 VI
 
 30
 Having determined that general creditors have standing to assert claims under Sec. 853(n), we consider whether general creditors fall within either of the two classes of third parties protected by subsection (n)(6). It is important to note from the outset that the claim of petitioners here is a fundamental one that seeks not merely to adjudicate their claim to assets properly forfeited to the government, but also attacks the validity of the forfeiture order itself. Petitioners claim to have transferred to Christopher assets that were included within the forfeiture order but were not profits or proceeds of the criminal enterprise and therefore not forfeitable in the first instance.[4]
 
 
 31
 Nothing in Sec. 853(n) explicitly acknowledges the right of third parties to attack the validity of the forfeiture order by proving that a particular asset was not forfeitable under the terms of the statute. Serious due process questions would be raised, however, if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture. The determination made at the defendant's criminal trial that the property was subject to forfeiture cannot be considered binding on persons who were not only not parties to the criminal action but were specifically barred from intervening. See 21 U.S.C. Sec. 853(k) (barring third parties from intervening in the criminal trial); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (citing Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971)) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").
 
 
 32
 In determining whether Sec. 853(n)(6) recognizes the claims advanced here we must resolve all ambiguities in the text of the statute in a manner that will avoid this possible constitutional infirmity. United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953) "[I]f a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1931) (citations omitted).
 
 
 33
 The legislative history of Sec. 853(n)(6)(B) convinces us that Congress intended to permit general creditors who give value to the forfeited estate in an arm's-length transaction to recover. We hold that general creditors who have a legal interest in the forfeited estate and who gave valuable consideration to the estate without knowledge of the potential forfeitability of the defendant's assets may recover the value so conveyed under Sec. 853(n)(6)(B).
 
 
 34
 Before passage of the Comprehensive Forfeiture Act of 1984, third parties asserting an interest in forfeited assets could gain relief only by petitioning the Attorney General for relief or mitigation. The granting of such petitions was a matter solely within the unreviewable discretion of the Attorney General. See United States v. L'Hoste, 609 F.2d 796, 812 (5th Cir.1980) (construing 18 U.S.C. Sec. 1963(c) to allow third-party petitions for relief from forfeiture to be made to the Attorney General and refusing to allow the district court to exercise its discretion so as to protect the rights of innocent third parties); 21 U.S.C. Sec. 853(i) (expressly granting the Attorney General the power to grant petitions for mitigation or remission of forfeitures obtained under the Continuing Criminal Enterprise Act).
 
 
 35
 In discussing 18 U.S.C. Sec. 1963(l ), a provision of the RICO statute that is identical to Sec. 853(n), the Senate Committee on the Judiciary noted that the Department of Justice had changed its position on the propriety of the remission and mitigation proceedings as the only source of relief for third parties whose property interests were compromised by an in personam forfeiture order and expressed its view that such third parties were entitled to judicial review of their claims.
 
 
 36
 Until recently, the Department of Justice had adhered to the position that all third parties, whether asserting a legal or equitable basis for relief from an order of criminal forfeiture, should ... pursue the remedy of petitioning the Attorney General for remission or mitigation of forfeiture. Traditionally, the Attorney General's decision with respect to such petitions, petitions which are most frequently filed as the result of civil forfeiture actions, has been viewed entirely as a matter of discretion and not subject to judicial review. Since third parties with interests in criminally forfeitable property may not participate in the criminal trial, while all parties with an interest in civilly forfeitable property may participate in judicial forfeiture proceedings, strict application of the principle of discretionary, nonreviewable administrative decisions on third party claims in the criminal forfeiture context had been of concern to the Committee.
 
 
 37
 After introduction of S. 829, the Department of Justice informed the Committee that their position with respect to third party claims in the criminal forfeiture context had changed. The Department's new position is that third parties who assert claims to criminally forfeited property which, in essence, are challenges to the validity of the order of forfeiture are entitled to a judicial determination of their claims. Thus, it would be improper to require such parties to seek relief in the remission and mitigation process (as may have been implicit in the bill as introduced), since the granting of such petition is solely a matter of executive discretion. However, the remission and mitigation process would remain the appropriate exclusive remedy for third parties who assert not a legal basis for relief, but rather more equitable grounds.
 
 
 38
 Criminal forfeiture is an in personam proceeding. Thus, an order of forfeiture may reach only property of the defendant, save in those instances where a transfer to a third party is voidable. Thus, if a third party can demonstrate that his interest in the forfeited property is exclusive of or superior to the interest of the defendant, the third party's claim renders that portion of the order of forfeiture reaching his interest invalid. The Committee strongly agrees with the Department of Justice that such third parties are entitled to judicial resolution of their claims.
 
 
 39
 S.Rep. No. 225, 98th Cong., 2d Sess. 207-08, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3390-91 (emphasis added) (footnotes omitted) (hereinafter cited as S.Rep.).
 
 
 40
 The text cited above reveals that Congress intended, through Sec. 1963(l ) and its equivalent, Sec. 853(n), to provide a means by which third persons who raise challenges to the validity of the forfeiture order could have their claims adjudicated. It would be an oddity if Congress, having so clearly expressed its intention that such claim be heard, did not intend those who successfully pressed those claims to be awarded relief. See United States v. Mageean, 649 F.Supp. 820, 829 (D.Nev.1986).
 
 
 41
 Congress's primary concern in adopting the relation-back provision was to make it possible for courts to void sham or fraudulent transfers that were aimed at avoiding the consequences of forfeiture. S.Rep. at 209 n. 47. Congress did not intend to permit courts to void "arms'-length" transactions. See S.Rep. at 200-01.
 
 
 42
 Section 853(n)(6)(B) reflects Congress's attempt to define "arms'-length" transactions. Although it speaks in terms of a "bona fide purchaser for value," it is obvious from Congress's goal in enacting this provision that it did not mean the term "purchaser" to operate as a limitation on the class of those who having engaged in arms'-length transactions with the defendant were entitled to protection of their interests. If the term "purchaser" were so construed, a car dealer who sold a car to a later convicted defendant without knowledge of the potential forfeitability of the defendant's assets could have the payment he received for the car forfeited while a person who purchased otherwise forfeitable stock from the defendant would be protected. The innocent car dealer and the innocent purchaser of stock stand in the same shoes as far as their relationship to the defendant is concerned. They both engaged in arms'-length transactions with the defendant, they both gave value to the defendant, and they both received only fair exchange for what they gave. See United States v. Rogers, 602 F.Supp. 1332, 1348 (D.Colo.1985). It would be an anomaly to suggest that Congress intended that these identically positioned innocents be treated disparately.
 
 
 43
 We conclude that in order to effectuate legislative intent the term "bona fide purchaser for value" must be construed liberally to include all persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return. If such persons are without knowledge of the potential forfeitability of the defendant's assets, they are entitled to recover under Sec. 853(n)(6)(B). It does not matter for purposes of pursuing a petition under Sec. 853(n)(6)(B) whether the arms'-length transaction was completed prior to entry of the order of forfeiture and the third party is seeking to retain value already conveyed by the defendant, or whether the transaction, intended to be completed in the future, is incomplete, the petitioner having already conveyed value and her anticipation of return been frustrated by the intervention of the forfeiture order.
 
 VII
 
 44
 Because both William and Miller fall within the class of third parties Congress intended to protect under Sec. 853(n)(6)(B), we affirm the district court's grant of their petitions. William gave $25,000 to Christopher in anticipation that he would receive equivalent value in return.[5] The government was unsuccessful in its effort to establish that William had knowledge of the forfeitability of Christopher's assets. The district court, therefore, did not err in ordering that the $25,000 Christopher owed William be exempted from forfeiture.
 
 
 45
 Miller gave valuable gems to Christopher. It expected to receive in return either the gems themselves or their value. The district court found, plausibly, that Christopher had sold the stones thus becoming obligated to pay Miller their value. There was no evidence that Miller had actual or constructive knowledge of the forfeitability of Christopher's assets. The district court's award of relief to Miller was therefore appropriate.
 
 VIII
 
 46
 On cross-appeal, William Reckmeyer asserts that he is entitled to attorney's fees under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412. The district court denied his claim on the grounds that (1) the Equal Access to Justice Act does not provide for attorney's fees in criminal forfeiture cases and (2) even if it did, William could not prevail because the government's position was legally and factually reasonable. Leaving to another day the question whether the Equal Access to Justice Act applies to criminal forfeiture cases, we affirm the district court on the latter ground. This was a complex case involving the difficult task of construing a new and far-reaching piece of legislation. The government's position that William was not entitled to recover either because he lacked standing to pursue a claim under the statute or because he had knowledge of his son's activities was a reasonable one even though it did not prevail.
 
 
 47
 AFFIRMED.
 
 
 
 [1]
 Third parties are barred by the statute from attempting to establish their interest in property subject to forfeiture until an order of forfeiture has been entered. They may not intervene in the criminal action against the defendant in which the government establishes its right to forfeiture, nor may they initiate a civil action to adjudicate the validity of their interest once an indictment or information has been filed. 21 U.S.C. Sec. 853(k)
 
 
 [2]
 See Reed, Criminal Forfeiture Under the Comprehensive Forfeiture Act of 1984: Raising the Stakes, 22 Am.Crim.L.Rev. 747, 772 (1985)
 
 
 [3]
 It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest civil forfeitures. In the civil forfeiture context, 21 U.S.C. Sec. 881(a)(6) protects third parties by providing that "the interest of an [innocent] owner" in an asset may not be forfeited. Courts have construed this provision to protect any innocent third party who claims a legal or equitable interest in the forfeited asset. See, e.g., United States v. $47,875.00 in United States Currency, 746 F.2d 291, 293 (5th Cir.1984) (citing Joint Explanatory Statement of Titles II and III, reprinted in 1978 U.S.Code Cong. & Ad.News 9496, 9522-23). Despite this broad construction of Sec. 881(a)(6) unsecured creditors generally have been unsuccessful in pursuing claims against property subject to civil forfeiture. Contrary to the government's suggestion, however, the failure of general creditors to prevail in civil forfeiture actions has not turned on their inability to demonstrate a protectable interest in the property of the person whose conduct led to the forfeiture but rather on their inability to demonstrate that their interest lay in the specific asset being forfeited. See, e.g., United States v. $4,255,000.00 in United States Currency, 762 F.2d 895 (11th Cir.1985); United States v. $47,875.00 in United States Currency, 746 F.2d 291 (5th Cir.1984); United States v. One Piece of Real Estate, 571 F.Supp. 723 (W.D.Tex.1983)
 Unlike secured creditors, general creditors cannot point to any one specific asset and claim that they are entitled to payment out of the value of that specific asset. General creditors instead enjoy a legal interest in the entire estate of the debtor.
 
 
 [4]
 Notably, all general creditors who acquired their creditor status by transferring goods or moneys to the debtor (as opposed to services) would be able to make this same claim
 
 
 [5]
 The government asserts that William abandoned the $25,000 by telling Christopher that he could retain the $25,000 if he gave William $25,000 worth of the Shelburne Glebe in the future. The district court found that a binding obligation still existed between William and Christopher and that only the time and manner of repayment changed. We agree