# Authority to Pay State and Local Taxes on Property After Entry of an Order of Forfeiture

The Attorney General has discretionary authority to make payments of state and local tax claims against civilly forfeited property after a forfeiture order has been issued, based on her equitable discretion to administer civilly forfeited property, under 21 U S C § 881(b)-(e) and 28 U.S.C. § 524(c)(1)

The Attorney General has discretion to pay state and local tax claims against criminally forfeited property, under the authority in those statutes to "take any other action to protect the rights of innocent persons which is in the interests of justice."

December 9, 1993

MEMORANDUM OPINION FOR THE DIRECTOR AND CHIEF COUNSEL
EXECUTIVE OFFICE FOR ASSET FORFEITURE,
AND THE DEPUTY DIRECTOR
ASSET FORFEITURE OFFICE, CRIMINAL DIVISION

You have requested advice on two matters: a proposed Directive from the Executive Office for Asset Forfeiture ("Directive") that would authorize payment of state and local taxes on some civilly forfeited property for which the court had notice of a state or local tax claim before the court entered an order of forfeiture, and a draft Memorandum from the Asset Forfeiture Office, Criminal Division, to the Attorney General ("AG Memo") concluding that the Attorney General may pay state and local taxes on criminally forfeited property (and proposing an Attorney General Order to delegate such authority to the Director of the Asset Forfeiture Office). The proposed Directive and the draft AG Memo both raise the question of the Attorney General's discretionary authority to pay taxes, for the period from the offense giving rise to forfeiture to the entry of an order of forfeiture, on property for which a court has already entered an order of forfeiture.

The focus of our previous opinion, to which the Directive and the AG Memo both refer, was the liability of the United States for payment of such taxes on property for which a court had not yet entered a forfeiture order. *See Liability of the United States for State and Local Taxes on Seized and Forfeited Property*, 17 Op. O.L.C. 104 (1993) ("Copeland Memorandum"). Accordingly, that opinion, which reconsidered an earlier Office of Legal Counsel ("OLC") opinion in light of *United States v. 92 Buena Vista Ave.*, 507 U.S. 111 (1993) ("*Buena Vista*"), did not specifically address the circumstances at issue in the Directive and the AG Memo. We now conclude that payment of taxes on civilly forfeited property on the terms set forth in the proposed Directive would not be inconsistent with the civil forfeiture

159

statute and would not exceed the Attorney General's equitable discretion under the civil forfeiture laws. We also conclude that payment of taxes on criminally for-feited property in the circumstances apparently envisioned by the draft AG Memo would not be unlawful under the criminal forfeiture laws or beyond the Attorney General's equitable, discretionary authority under such laws. In addition, we de-scribe revisions to the draft AG Memo necessary to ensure accuracy in its descrip-tion of OLC advice.

## I.

The proposed Executive Office for Asset Forfeiture Directive provides, in rele-vant part:

> This directive . . . permits the payment of taxes upon civilly for-feited properties: (1) which have not yet been sold, or (2) which are the subject of pending litigation regarding payment of taxes, *pro-vided, however,* that a tax claim was filed with the federal district court prior to entry of the order of forfeiture, or that a valid lien had been recorded among the pertinent land records giving the federal district court notice of the tax claim prior to entry of the order of forfeiture.

Directive at 2.[1]

Where an appeal from an order of forfeiture is no longer available or was un-successful, a state or locality asserting a tax claim has no legal right and no judicial remedy under the civil forfeiture statute's "innocent owner" provision as inter-preted in *Buena Vista.* *See* Copeland Memorandum, 17 Op. O.L.C. at 106-07, 113 n.13. Nonetheless, a permissible interpretation of the statutes governing civil forfeitures would authorize payment of the taxes described in the Directive as an exercise of the Attorney General's equitable discretion in administering civilly forfeited property. *See* 21 U.S.C. § 881(b)-(e); 28 U.S.C. § 524(c)(1) (Attorney General's authority in administering civil forfeiture laws); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843-44 (1984) (deference to reasonable agency construction of statute it administers, so long as not contrary to clearly expressed congressional intent); *Fertilizer Inst. v. EPA,* 935 F.2d 1303, 1309 (D.C. Cir. 1991) (*Chevron* principles apply to agency interpretations that are not full "legislative" rules); *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (D.C. Cir. 1984) (same), *cert. denied,* 471 U.S. 1074 (1985).

Two related arguments support this conclusion. First, a reasonable construction of the civil forfeiture statute could consider the tax liens described in the Directive

---

[1] You have informed us, and the following analysis assumes, that the modifying language following "*provided, however,*" applies to both enumerated categories of civilly forfeited property

to be the equivalent of a pre-offense ownership interest, or other interest, that could be forfeited to the United States and that the Attorney General subsequently could restore, after a court order of forfeiture, to the person who previously held such an interest.

As interpreted by the Supreme Court in *Buena Vista*, the civil forfeiture statute protects the property of an "owner" who "prove[s]," before the entry of an order of forfeiture, "that [he or] she is an innocent owner." *Buena Vista*, 507 U.S. at 127 (plurality opinion); 21 U.S.C. § 881(a)(6), (7) (commonly referred to as the "innocent owner" provision, stating that "no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner"); *id.* § 881(h) (commonly referred to as the "relation back" provision, stating that "[a]ll right, title, and interest in property described in [section 881(a)] shall vest in the United States upon commission of the act giving rise to forfeiture"). As the Copeland Memorandum explains, a state or locality holding a tax lien against a property is an "owner" of that property, and in almost all cases, there will be no doubt that the state or locality will satisfy the statute's "innocence" requirement. *See* Copeland Memorandum, 17 Op. O.L.C. at 106; *cf.* Directive at 1.

In light of these considerations, it would not be unreasonable to conclude that *notice* to the federal district court of the tax claim before the entry of an order of forfeiture can constitute the showing or proof required by the statute, in light of *Buena Vista*.[2] While an unappealed or unsuccessfully appealed forfeiture order in such a case would have the effect of vesting the taxing authority's interest in the United States, retroactive to the date of the offense giving rise to forfeiture, the taxing authority still would have demonstrated a protected innocent ownership interest that the court merely failed to recognize before issuing its order. On this analysis, the affirmed or unchallenged forfeiture order would have effected a forfeiture of that interest to the United States, one which the Attorney General could remit or mitigate after the conclusion of the forfeiture proceedings. *See* 21 U.S.C. § 881(d) (laws relating to seizure and forfeiture of property, including mitigation and remission of forfeiture, under the customs laws generally apply to civil forfeiture under § 881, except that the Attorney General and her delegees are substituted for the Secretary of the Treasury and customs authorities); 19 U.S.C. § 1618 (authority of Secretary of the Treasury, customs officials to "remit or mitigate" forfeiture upon a finding that the "forfeiture was incurred without willful negli-

---

[2] This conclusion is consistent with our discussion in the Copeland Memorandum of the Attorney General's discretionary authority under 28 U S C. § 524 Under the analysis employed in this Memorandum and under the standards adopted in the Directive, a state or locality would still have to have "establish[ed]" that it is an "innocent owner" (with the aid of the presumption of "innocence" that is set forth in the Directive and that is consistent with the Copeland Memorandum's conclusion that the "'innocence requirement" would be "easy to satisfy in most cases") for the Attorney General or her delegees to make a discretionary payment of post-offense tax claims Copeland Memorandum, 17 Op O L.C at 113 n 13

gence or without any intention on the part of the petitioner . . . to violate the law" or that there exist "such mitigating circumstances as to justify the remission or mitigation"); 28 U.S.C. § 524(c)(1)(E) (authority of Attorney General to make "disbursements authorized in connection with remission or mitigation procedures relating to property forfeited under any law enforced or administered by the Department of Justice").[3]

A contrary conclusion — that the entry of an order of forfeiture, by operation of the relation back doctrine, results in the taxing authorities', in effect, never having had any interest in the property, despite the evidence before the court that they had an innocently held ownership interest — would forge an extremely tight, and rather odd, link between the prior existence of a substantive interest (whether or not such interest may be asserted or protected in court proceedings) and the course of subsequent judicial proceedings. Neither the civil forfeiture statute nor the opinions in *Buena Vista* appear to require such a link.

Second, although a forfeiture order may deprive holders of the tax claims described in the Directive only of something less than the type of interest at issue in conventional proceedings for remission or mitigation of civil forfeiture (i.e., those involving petitioners who had an interest in the property prior to its use in the offense giving rise to forfeiture), the Attorney General's equitable authority to reduce the harsh impact of forfeiture still can be construed to extend sufficiently beyond ordinary remission and mitigation to include the discretionary payment of tax claims contemplated by the Directive (as well as the discretionary denial of potentially eligible requests for relief, if any, that are not covered by the Directive). Courts and Congress have stressed that the Attorney General has broad and generally unreviewable discretion in exercising his or her lawful authority in this area. *See, e.g., United States v. Reckmeyer*, 836 F.2d 200, 207 (4th Cir. 1987) (granting of a proper petition for "relief or mitigation" of forfeiture was "a matter solely within the unreviewable discretion of the Attorney General"); *United States v. $2,857.00*, 754 F.2d 208, 214 (7th Cir. 1985) (Attorney General has "virtually unreviewable discretion to ameliorate the harshness of forfeiture statutes in appropri-

---

[3] This interpretation of the remedial scheme under the civil forfeiture laws also derives support from its similarity to the structure Congress contemplated in enacting the "bona fide purchaser" provision in criminal forfeiture statutes *See, e.g*, 21 U.S C § 853(n)(6); 18 U S.C. § 1963(*l*)(6). Under those provisions, a claimant who establishes his bona fide purchaser status in court proceedings ancillary to the forfeiture proceedings has a legally protected interest in the property. A valid court order may not forfeit that interest and the Attorney General's recognition of such an interest would not be discretionary. Such a bona fide purchaser is in the same position as a claimant in civil forfeiture proceedings who establishes his innocent owner status prior to the court's entry of an order of forfeiture *See* Copeland Memorandum, 17 Op. O L C at 109-11

The legislative history of the bona fide purchaser provision indicates that Congress assumed that a claimant who "fails to obtain relief under the . . ancillary hearing provision [which enables such a claimant 'in essence . [to] challenge[] the validity' of a forfeiture order] . . . may [still] seek equitable relief from the Attorney General." S Rep. No 98-225, at 208-09 (1983), *reprinted in* 1984 U.S.C C.A N 3182, 3391-92 The Directive would provide equivalent relief to some claimants who failed to obtain relief in court proceedings under the innocent owner provision in the civil forfeiture statute

ate cases"); *United States v. One 1973 Buick Riviera*, 560 F.2d 897, 900 (8th Cir. 1977) ("overwhelming weight of authority" supports the view that "denial of [a] petition for remission" is "not subject to judicial review on the merits"); *United States v. One 1961 Cadillac*, 337 F.2d 730, 732-33 (6th Cir. 1964) (similar); S. Rep. No. 98-225, at 207-08 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3390, 3392 (noting that petitions for remission or mitigation of forfeiture "are most frequently filed as the result of civil forfeiture actions" and that the Attorney General's decisions with respect to such requests for "equitable relief" "[t]raditionally" have been "viewed entirely as a matter of discretion and not subject to judicial review").[4]

In the draft AG Memo, the first full paragraph on page three could be revised to reflect the advice given in this part of this Memorandum, and should be revised to make clear that payment of liens for post-offense taxes where a state or local tax lien-holder establishes its "innocent ownership" status to the court's satisfaction before the entry of a judgment of forfeiture is not (as the AG Memo's use of the phrase "is permitted to pay" appears to suggest) an exercise of the Attorney General's discretion.

## II.

The draft Attorney General Memorandum concludes:

> [T]he statutory language [in 21 U.S.C. § 853(i)(1), 18 U.S.C. § 1963(g)(1) and other criminal forfeiture statutes containing, or adopting by reference, identical provisions] that permits the Attorney General to "take any other action to protect the rights of innocent persons which is in the interest of justice" provides the necessary statutory authority to make payments of state and local taxes on property forfeited under the criminal forfeiture laws *as a discretionary matter.*

AG Memo at 3. As the AG Memo correctly indicates, holders of state and local tax claims against such property for the period after the commission of the act giving rise to forfeiture have no legal right and no judicial remedy under the criminal forfeiture laws. There is no equivalent to the civil forfeiture statute's "innocent

---

[4] *But see also LaChance v. DEA*, 672 F Supp 76, 79-80 (E D N.Y. 1987) ("formalized invariable policy of denying petitions" and failure "to give any reason for denial" is basis for limited judicial intervention "to direct [an] agency to exercise its jurisdiction" to decide the petition), Memorandum for Leland E. Beck, Senior Counsel, Office of Policy Development, from Rosemary Hart, Acting Deputy Assistant Attorney General, Office of Legal Counsel, *Re Statutory Authorization for the Proposed Regulations Governing the Remission or Mitigation of Forfeited Property* (Mar 25, 1993) (interpreting civil forfeiture statute remission and mitigation authority as not authorizing transfers to persons who had no prior interest in the forfeited property but who were victims of the offense giving rise to forfeiture).

owner" provision in the criminal forfeiture statutes, and the "bona fide purchaser" exception is unavailable to such claimants. *See* Copeland Memorandum, 17 Op. O.L.C. at 112. A permissible construction of the "rights of innocent persons" provision, however, would authorize discretionary payment of such taxes.[5]

It would be difficult to base the authority to grant such equitable and discretionary relief on the analysis offered in Part I of this Memorandum to support the post-forfeiture order payment of claims for post-offense taxes in the civil forfeiture context. Because the criminal statutes contain no innocent owner provision, any "showing" or "proof" with respect to such a tax claimant's innocent ownership (short of the "bona fide purchaser" showing which taxing authorities cannot make) would appear to be irrelevant and not to provide a basis for the Attorney General to remit or mitigate any forfeited interest. The logic of *Buena Vista* would seem to dictate that the relation back doctrine, *see, e.g.*, 18 U.S.C. § 1963(c); 21 U.S.C. § 853(c); *cf.* 21 U.S.C. § 881(h) (civil provision, identical in relevant part), will have operated to leave a tax lien-holder as, in effect, never having held any "interest of an owner," 21 U.S.C. § 881(a)(6), (7), in the property with regard to post-offense taxes. On this reasoning, there will have been no ownership interest forfeited and, thus, nothing for the Attorney General to remit or mitigate. *Cf.* Copeland Memorandum, 17 Op. O.L.C. at 113 n.13.

The better argument derives discretionary and equitable authority of the Attorney General to lessen the impact of forfeiture on the claimants for post-offense taxes from the "rights of innocent persons" provisions cited in the AG Memo, and depends on a construction of "rights of innocent persons" that is broader than "innocent ownership." We believe that adopting such a construction would not be unlawful and would be within the Attorney General's authority to interpret and administer the criminal forfeiture statutes. *See, e.g.*, 18 U.S.C. § 1963(e)-(g); 21 U.S.C. § 853(g)-(j) (Attorney General's authority in administering criminal forfeiture laws and disposing of property seized under criminal forfeiture laws); *Chevron U.S.A., Inc.*, 467 U.S. at 843-44.

First, the statutory language is compatible with such a view. Criminal forfeiture statutes explicitly confer upon the Attorney General the authority to "take any *other* action to protect the rights of innocent persons," in addition to the authority to remit or mitigate forfeitures (and the obligation to recognize the interests of

---

[5] To be eligible for discretionary relief under these provisions, it would appear to be sufficient for state and local taxing authorities to be "innocent owners," within the meaning of that term under the civil forfeiture provisions — a standard that all or nearly all taxing authorities will meet, *cf.* Copeland Memorandum, 17 Op. O.L.C. at 106 ("a state or locality holding a tax lien can be an 'owner'" and "[t]he 'innocence' requirement . . . would seem to be easy to satisfy in most cases"); Directive at 1 ("indulg[ing] a presumption of innocence" of taxing authorities under the civil forfeiture statute "in the absence of exceptional circumstances") We have found nothing in the statutory language, legislative history or judicial interpretations to suggest that the word "innocent" in the criminal forfeiture statute's phrase "innocent persons" is narrower than the phrase in the civil forfeiture statute that courts and Congress have summarized as "innocent" (in the phrase "innocent owner"). *See* S Rep. No. 98-225, at 215, *reprinted in* 1984 U.S C C A.N at 3398, *Buena Vista*, 507 U S 111. If "rights" is construed as described in this Memorandum, the term is broader than "ownership" or "interest of an owner."

bona fide purchasers and holders of senior vested interests). 18 U.S.C. §§ 1467(h)(1), 1963(g)(1), 2253(h)(1); 21 U.S.C. § 853(i)(1) (emphasis added). Construing the quoted language as more than surplusage requires a conclusion that the Attorney General's authority is broader than that exercised in ordinary remission and mitigation proceedings. Also, the use of the term "rights *of* innocent persons" in these provisions, but "right, title, and interest *in* property" the forfeiture of which is subject to remission and mitigation in the civil and criminal forfeiture statutes, 19 U.S.C. § 1618; 21 U.S.C. § 881(a), (h); 18 U.S.C. § 1963(a)-(c); 21 U.S.C. § 853(a)-(c) (emphasis added), and "interest *of an owner*" in the innocent owner provisions of the civil forfeiture statute, 21 U.S.C. § 881(a)(6), (7) (emphasis added), suggests a lesser claim on the property, or a looser connection between the claimant and the property, in the former context. *Cf.* Black's Law Dictionary 812, 1324 (6th ed. 1990) (defining "interest" as "[t]he most general term . . . to denote a right, claim, title, or legal share *in* something"; defining "right," in its *"narrower signification"* as "an interest or title in an object of property" and, more generally, as "[t]hat which one person ought to have or receive from another.") (emphasis added). This contrast offers some support for the view that the criminal statutes give the Attorney General discretionary authority to recognize, after forfeiture, claims that are broader than ownership interests, including claims for taxes for the period after the offense giving rise to forfeiture.

Second, the legislative history of two principal criminal forfeiture provisions, 21 U.S.C. § 853(i) and 18 U.S.C. § 1963(g) (provisions that the other criminal forfeiture statutes cited in the AG Memo incorporate by reference or replicate), suggests that the Attorney General's authority is broad enough to include payment of the taxes described in the AG Memo. The description of these provisions states that a claimant who could have raised a bona fide purchaser defense in a hearing ancillary to a criminal forfeiture proceeding, but who failed to do so, still "may seek equitable relief from the Attorney General." S. Rep. No. 98-225, at 208-09, *reprinted in* 1984 U.S.C.C.A.N. at 3391-92 (describing, somewhat loosely, this equitable relief as being available through a "remission and mitigation process"). Having foregone an available legal remedy for protecting an interest acquired after the offense that rendered the property subject to forfeiture, such a claimant would seem to be, after the final forfeiture order and the operation of the relation back doctrine, in essentially the same position as an "innocent" state or locality asserting a tax claim for the post-offense period. Given that Congress's view was that the equitable remedy of petitioning the Attorney General was clearly available to the potential bona fide purchaser claimant under existing law prior to the enactment of the bona fide purchaser defense, there would seem to be no reason to infer that Congress meant to restrict the remedy only to claimants who could have raised a successful bona fide purchaser defense to forfeiture in court proceedings, but were too slothful or too poorly advised to do so. *See id.* at 193, *reprinted in* 1984 U.S.C.C.A.N. at 3376 (under "[p]resent [f]ederal [l]aw . . . . [a] party who does not

have legal basis for defeating the forfeiture, but who has an equitable basis for relief, may petition the Attorney General.").

Third, judicial interpretations also provide some support for the position taken in the AG Memo. The most relevant opinion we have found construes 21 U.S.C. § 853(i)(1) as conferring upon the Attorney General extremely broad equitable authority to do what is "'fair and just,'" and concludes that a claimant whose claim against forfeited property arose after the offense giving rise to forfeiture, but whose interest was not that of a bona fide purchaser, could petition the Attorney General for equitable relief to "recoup some of its losses from [the] forfeited property." *United States v. Lavin*, 942 F.2d 177, 185 & n.10, 187 (3d Cir. 1991). The opinion does not state which provision in the statutory subsection is relevant. We believe that the better argument, and perhaps the only lawful conclusion, is that the authority to grant relief is that provided by the statutory mandate to "take any other action to protect the rights of innocent persons which is in the interest of justice." 21 U.S.C. § 853(i)(1); *see also United States v. Mandel*, 505 F. Supp. 189, 191-92 (D. Md. 1981) (describing predecessor to current 18 U.S.C. § 1963 as both "vest[ing] the Attorney General" with "authority to make provisions for the remission or mitigation of forfeitures" and "charg[ing] him with the obligation of protecting the rights of innocent persons"; suggesting that the latter authority is the likely basis for recognizing claim by third party that he, not defendant, owned property that court ordered forfeited), *aff'd* 705 F.2d 446 (4th Cir. 1983); S. Rep. No. 98-225, at 207 n.44, *reprinted in* 1984 U.S.C.C.A.N. at 3390 (citing *Mandel* as authority for the equitable, discretionary relief process to be retained after the enactment of current 18 U.S.C. § 1963(g)(1) and 21 U.S.C. § 853(i)(1)).

Finally, two references in the draft AG Memo to OLC's views are, at this stage, inappropriate. We believe that the draft AG Memo goes too far in concluding, at pages 3-4, that the procedure proposed in the AG Memo is "fully consistent with the letter and spirit" of the Copeland Memorandum. As this memorandum has indicated, the Copeland Memorandum did not address these issues, and a conclusion that such payments are permissible depends on an analysis that the Copeland Memorandum did not pursue or evaluate. If a statement similar to that contained in the draft AG Memo is to be retained, it should go no further than a statement that the proposed procedure is "compatible" or "not inconsistent" with the Copeland Memorandum. Also, this Office has not yet reviewed the legality of the delegation that the proposed order attached to the draft AG Memo would effect. Accordingly, the next to last paragraph of the draft AG Memo (stating that OLC has confirmed that the delegation is permissible) cannot be included at this time. Ordinarily, this Office addresses such issues at a later stage, as part of a review of a proposed Attorney General order for form and legality.

## III.

For the reasons set forth above, we conclude that it would not be unlawful for the Attorney General (or those to whom her authority is properly delegated, *see* 28 U.S.C. §§ 509, 510) to pay, in an exercise of equitable discretion, the taxes on civilly forfeited property as described in the proposed Directive from the Executive Office for Asset Forfeiture, and the taxes on criminally forfeited property as described in the draft Memorandum to the Attorney General from the Office for Asset Forfeiture.

Exercise of the Attorney General's equitable discretion to pay tax claims must, of course, comply with any applicable regulations, unless and until such regulations are lawfully modified. *See, e.g.*, 28 C.F.R. §§ 9.1-9.7 (1993). *See generally United States v. Nixon*, 418 U.S. 683, 694-95 (1974); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*