**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

PATRICIA HOLMES,
Claimant-Appellant,                                    No. 96-1690

and

KENNETH HAWKINS, a/k/a Kenny,
a/k/a January,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
G. Ross Anderson, Jr., District Judge.
(CR-94-32-8-33)

Submitted: October 7, 1997

Decided: January 15, 1998

Before WILKINS, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

C. Rauch Wise, WISE & TUNSTALL, Greenwood, South Carolina,
for Appellant. J. Rene Josey, United States Attorney, Marvin J.
Caughman, Assistant United States Attorney, Columbia, South Caro-
lina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Kenneth Hawkins pled guilty to his involvement in a massive drug conspiracy under 21 U.S.C. § 846 (1994), which spanned five years and amassed approximately five million dollars in illegal proceeds. As part of his plea agreement, Hawkins agreed to voluntarily forfeit his interest in numerous vehicles and real property under 21 U.S.C. § 853 (1994), as listed in his indictment.

Patricia Holmes, Hawkins' girlfriend, filed a third-party claim under 21 U.S.C. § 853 (1994), alleging that she was the actual owner of a 1987 convertible BMW and 1939 and 1985 Cadillacs subject to forfeiture. A magistrate judge held a § 853 hearing regarding Holmes' claim to the vehicles. The relevant facts adduced at the hearing are not in dispute. Holmes testified that she met Hawkins in 1987 and started seeing him in 1989 and that he was the father of her daughter born in 1991. She testified that he was a mechanic and that she had no knowledge of his illegal drug activities.

With respect to the 1987 convertible BMW, Holmes purchased the vehicle in September 1991 for $18,000 in cash from a car dealer. She alleged that she saved the money from various jobs beginning when she was age fourteen. At the time of the hearing she was age thirty-two. During that time period she stated that her highest annual salary was between $17,000 and $25,000--which she had earned only in the past several years. She produced a receipt for the BMW and title, tax, insurance, and repair bill documents indicating that she owned the car.

The salesman who sold the BMW testified that Hawkins had accompanied Holmes to purchase the car and that he had negotiated the price, although he told the salesman to title the vehicle in Holmes' name. The salesman further testified that the $18,000 in cash was

2

contained in an old wrinkled bag, with the money bundled by rubber bands, and was damp and gave off a strong odor. Holmes testified that she had first kept the cash under a rug and then later placed it in a fireproof safe. She also stated that she had received an unspecified lump sum payment after she stopped working for the state. Holmes affirmed that the BMW was maintained at Hawkins' sister's house because her cat had damaged the convertible top while it was parked at her house.

As for the Cadillacs, Holmes' testimony was as follows. She purchased the 1939 model from a man in Asheville, North Carolina, for $300 or $400, at which point it was a rusty shell with no tires. Thereafter, Hawkins restored the car for her, free of charge, with parts she had purchased. The personalized license tag reads "HAWK," which indicated that she was proud of how well Hawkins had restored the car. Holmes could not, however, explain the Government's affidavit which reflected that the vehicle was purchased from a man in Florida for zero dollars. With regard to the 1985 Cadillac, Holmes testified that she bought it for her mother because her mother was having problems with her car. She stated that she and her mother each paid $2500 toward the car and that because her mother was forgetful the car was titled in her name to ensure the taxes and insurance were paid. Holmes' testimony was corroborated by testimony from her mother and sister, which was received by stipulation.

The magistrate judge entered a final order of forfeiture finding Holmes "to be less than credible" and that she was merely a "`straw owner' of the vehicles, as she allowed Kenneth Hawkins to title the vehicles in her name in order to conceal his assets obtained with the profits of the drug trade."* The magistrate judge denied Holmes' motion for reconsideration, and the district court upheld the final order of forfeiture and the denial of the motion for reconsideration. In her appeal, Holmes attacks the criminal forfeiture statute as unconstitutional and alleges that the district court erred in finding that the three vehicles were properly forfeited to the Government. For the reasons that follow, we affirm.

_____

*(Joint Appendix "J.A." at 186).

3

Holmes alleges that 21 U.S.C. § 853 is unconstitutional as applied to a third-party claimant because it: (1) deprives the third party of a jury trial, in violation of the Sixth Amendment; (2) requires a third party to prove that the property should not be forfeited, and (3) provides greater protection to the indicted criminal defendant than to the third party, in violation of the Fifth Amendment.

Holmes' constitutional arguments are misplaced. A criminal forfeiture involves an in personam proceeding against a defendant charged with a specific crime. When a forfeiture provision is embodied in a plea agreement, the forfeiture is an element of the sentence imposed following conviction, or as here, a guilty plea. See Libretti v. United States, ___ U.S. ___, 64 U.S.L.W. 4005, 4008-09 (U.S. Nov. 7, 1995) (No. 94-7427) (holding that because a forfeiture provision contained in a plea agreement only is part of a criminal defendant's sentence, Fed. R. Crim. P. 11(f), requiring a district court to determine that there is a factual basis before accepting the plea, is inapplicable). The text of the criminal forfeiture statutes makes clear that Congress conceived of forfeiture as punishment for the commission of various drug and racketeering crimes. Id. (citing 21 U.S.C. § 853(a)). In this context, the criminal forfeiture is simply an aspect of the punishment imposed following conviction of a substantive criminal offense. Id. The Court in Libretti also noted that third-party claimants' rights were adequately protected under a § 853(n) hearing even though such hearing "deprives third-party claimants of the right to a jury trial and reverses the burden of proof." Id. at 4009. Thus, Libretti forecloses Holmes' constitutional attacks.

In her remaining issues, Holmes alleges that the district court erred in denying her claims to the vehicles because it allowed the Government to forfeit the 1939 Cadillac as illegal proceeds, when the indictment alleged that the car had been used to facilitate illegal activity, and because the evidence at the hearing was insufficient to defeat Holmes' claim to the 1985 Cadillac and 1987 BMW. Factual findings of the district court are overturned only if clearly erroneous. See Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985). When factual findings are based upon the credibility determinations of the trial court, an appellate court should allow even greater deference "for only the trial judge can be aware of the variations in demea-

4

nor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Id. at 575.

Holmes is correct that the indictment sought forfeiture of the 1939 Cadillac on the ground that it was used to facilitate Hawkins' drug trafficking. See 21 U.S.C. § 853(a)(2). The statute, however, provides for forfeiture of any property derived from or used to facilitate criminal activity upon a defendant's conviction. See 21 U.S.C. § 853(a); United States v. Moffitt, Zwerling & Kemler, 83 F.3d 660, 668-69 (4th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3501 (U.S. Jan. 21, 1997) (No. 96-356). Further, the statute "is to be liberally construed to effectuate its remedial purposes," i.e."to ease the government's ability to track down the proceeds of crime," and to "prevent[ ] defendants from shielding their assets from forfeiture simply by transferring an asset to a third party." Moffitt, Zwerling & Kemler, 83 F.3d at 669 (citations and internal quotations omitted). Therefore, whether the property was forfeited because it facilitated Hawkins' drug activities or was purchased from drug proceeds is irrelevant, as either prong justifies the forfeiture. See 21 U.S.C.§ 853(a).

We review the district court's determination that Holmes failed to meet her statutory burden and that the property was subject to forfeiture, for clear error. See United States v. Reckmeyer, 836 F.2d 200, 204 (4th Cir. 1987) (rejecting government's argument that the district court clearly erred in determining that third-party purchaser was reasonably without cause to believe that property was subject to forfeiture). Once the government has secured a stipulation as to forfeitability from a defendant, third-party claimants may establish their entitlement to return of the assets only by means of a § 853(n) hearing. Libretti, 64 U.S.L.W. at 4009. When a forfeiture order is entered, the government's title dates back in time to the criminal activity giving rise to the forfeiture. See Moffitt, Zwerling & Kemler, 83 F.3d at 670. Such property, if not in the hands of an "innocent transferee," is forfeitable. Id. Only two classes of third-party claimants are protected: those whose legal interests in the property were superior to the defendant's at the time the interest of the United States vested and "bona fide purchasers for value without knowledge of the forfeitability of the defendant's assets." Reckmeyer, 836 F.2d at 204 (citing § 853(n)(6)). These claimants are required to demonstrate their

5

status "by a preponderance of the evidence." See 21 U.S.C.
§ 853(n)(6).

We do not find that the district court clearly erred in determining that Holmes failed to demonstrate, by a preponderance of the evidence, that her interests were superior to the Government's or that she was a bona fide purchaser for value. See 21 U.S.C. § 853(n)(6); Reckmeyer, 836 F.2d at 204. Holmes' testimony that she purchased and maintained the BMW and 1939 Cadillac was not supported by the evidence. This, in turn, led the magistrate judge to conclude that with respect to the 1985 Cadillac, that Holmes' "testimony could arguably support her claim" but that "when viewed in conjunction with her incredulous testimony relating to the 1939 Cadillac and 1987 BMW, I find her testimony unbelievable." (J.A. at 186). To the extent we may review this conclusion, we do not find that the magistrate judge clearly erred. See Anderson, 470 U.S. at 575 (noting that appellate courts must give great deference to the trial judge's credibility determinations).

Accordingly, we affirm the orders of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6