UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. No. 91–0655 (JHG).

United States District Court, District of Columbia.

Aug. 19, 1993.

Stefan D. Cassella, U.S. Dept. of Justice, Washington, D.C., for the U.S.

Susan J. Kohlmann and Aileen Meyer, Winthrop, Stimson, Putnam & Roberts, New York City, for Credit Suisse.

Wayne C. Matus, Christy & Viener, New York City, for Indus. Bank of Japan.

R. Kenly Webster and Michelle D. Bernard, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for Shaw, Pittman.

*ORDER DISMISSING THE MARCH 11, 1992 PETITION OF THE BANK OF NEW YORK, THE APRIL 23, 1992 PETITION OF CREDIT SUISSE, THE MARCH 18, 1992 AND SEPTEMBER 9, 1992 PETITIONS OF THE INDUSTRIAL BANK OF JAPAN, AND THE APRIL 1, 1992 AND SEPTEMBER 10, 1992 PETITIONS OF SHAW, PITTMAN, POTTS & TROWBRIDGE*

JOYCE HENS GREEN, District Judge.

Presently pending are the United States' motions to dismiss the petitions for hearings to adjudicate interests in forfeited property filed by **The Bank of New York ("BONY")**, **Credit Suisse, The Industrial Bank of Japan ("IBJ")**, and **Shaw, Pittman, Potts & Trowbridge ("Shaw, Pittman")**. Upon consideration of the motions to dismiss, all filings relating thereto, and oral argument presented at the June 4, 1993 hearing, the motions are granted and the petitions are dismissed.

## BACKGROUND

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered. Paragraph 1(e) of the Order provides that the corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of court-appointed fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement. Attached to the January 24, 1992 Order as Exhibit A was a list of specific BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a supplemental Order on January 31, 1992 which directed immediate seizure of the specific assets listed therein.

In satisfaction of 18 U.S.C. § 1963 (*l* )(1), and to inform third parties of potential rights to seek recovery of assets declared forfeited, the United States published notice of the Order of Forfeiture, as amended, during the period between February 13, 1992 and March 27, 1992 in eleven major United States newspapers including the *Wall Street Journal*, the *New York Times*, the *Chicago Tribune*, and the *Los Angeles Daily Journal*. *See* Government's Compliance with Order of May 8, 1992, filed May 12, 1992. In addition, personal notice was sent to over 340 persons and entities as late as April 3, 1992. *Id.*

On March 11, 1992, BONY filed a petition to recover lost income from a commercial lease it entered with the New York Agency of defendant BCCI, S.A. ("the Agency"). BONY asserts that as of the date its petition was filed, its claim was worth approximately $6.6 million, the anticipated value of the lease from the month following the filing of the petition until the expiration of the lease in December 31, 1998. BONY acknowledges that the Superintendent of Banks of the State of New York has occupied the leasehold in connection with the liquidation of the Agency, has made monthly payments for its enjoyment of the premises, and is expected to continue to make such payments, at least for the short term. The petitioner therefore concedes that any award it might receive in this action should be adjusted downward to reflect payments made by the Superintendent.[1]

---

1. BONY also concedes that the value of the lease should be reduced to reflect, *inter alia*, a security deposit paid by the Agency.

On April 23, 1992, Credit Suisse, a bank organized under the laws of Switzerland, filed a petition seeking to recover almost $26 million worth of forfeited funds for alleged losses arising from a series of foreign exchange transactions it entered with the Abu Dhabi and Tokyo branches of BCCI, S.A. In all six of the claims asserted, the petitioner avers that it transferred currency to BCCI, S.A.—Abu Dhabi or BCCI, S.A.—Tokyo but did not obtain money in return due to the worldwide shutdown of BCCI. In two of the claims, the petitioner asserts that it was able to repurchase the currency it transferred or to otherwise cover its losses, but at less favorable exchange rates.

IBJ filed its first petition on March 18, 1992 claiming interests which also arise from an uncompleted foreign currency swap. The petition states that on July 2, 1991, IBJ and BCCI, S.A.—Tokyo entered into an agreement whereby IBJ would transfer ¥ 4.4 billion to BCCI's account at the Dai-ichi Kangyo Bank, Ltd. in exchange for the transfer of $32 million from BCCI, S.A.—Tokyo's account at BankAmerica International in New York to IBJ's account at Morgan Guaranty. The parties agreed that both transfers would be made on July 5, 1991, and although IBJ effectively transferred its ¥ 4.4 billion, BankAmerica refused to transfer BCCI, S.A.—Tokyo's $32 million in light of the global shutdown of BCCI instituted earlier that day. IBJ seeks to recover the $32 million which it never received.

Shaw, Pittman filed its first petition on April 1, 1992. The law firm alleges that it was retained by three of the corporate defendants to represent Swaleh Naqvi, their former acting Chief Executive Officer, with respect to various matters including investigations conducted by federal and state authorities relating to the defendants' relationship with Credit and Commerce American Holdings, N.V., the ultimate parent of First American Bankshares, Inc. It is claimed that from May 14, 1991 through February 29, 1992, the firm provided services to Mr. Naqvi worth almost $300,000 but has received only a $20,000 retainer payment. Shaw, Pittman seeks to recover the balance owed by BCCI for the legal services performed.

In accordance with a briefing schedule set by the Court, the government filed a motion to dismiss all four petitions. Oppositions and a reply were submitted, and Credit Suisse and IBJ filed surreplies as well as notices of new authority in support of their oppositions.

On June 24, 1992, the government filed a Motion to Amend Order of Forfeiture to Include Additional Property, seeking forfeiture and seizure of assets in newly discovered bank accounts held in the names of the corporate defendants, proceeds from the sale of a condominium purchased with resources provided by a corporate defendant, money remaining in a "BCCI Legal Fund" established by one of the corporate defendants for the defense of its employees' legal interests, a bankruptcy distribution to one of the corporate defendants, and assets held at various New York financial institutions in the name of ICIC Investments Ltd., a sibling corporation of defendant ICIC (Overseas) Ltd. The Court granted the government's motion and issued an Order of Forfeiture on July 29, 1992. The United States subsequently provided notice of the Order to potential claimants.[2]

In September 1992, IBJ and Shaw, Pittman filed second petitions asserting interests in funds declared forfeited in the July 1992 Order of Forfeiture. These second petitions incorporated by reference the earlier filings, and differed from the first petitions only by requesting that the relief sought be satisfied from the newly obtained pool of funds. The government filed a motion to dismiss the second petitions, which became ripe in late April 1993. By Order dated May 18, 1993, the Court invited, though did not require, oral argument on the motions to dismiss. Credit Suisse and IBJ accepted the invitation, and argument was heard on June 4, 1993.

## DISCUSSION

▮ Title 18, United States Code, § 1963 sets forth an orderly procedure by which third parties seeking to recover interests in

---

**2.** Over 100 petitions to amend the two Orders of Forfeiture have been filed as of this date.

forfeited property may obtain judicial resolution of their claims. The provision granting standing to parties seeking to amend an order of forfeiture to exclude certain property states:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice ..., whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

18 U.S.C. § 1963(*l*)(2). Section 1963(*l*)(6) sets forth the substantive elements which a third party must establish to successfully obtain amendment of an order of forfeiture and provides in full:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.[3]

Only by establishing standing and satisfaction of all requisite elements of either § 1963(*l*)(6)(A) or (B) may a party obtain judicial relief from an order of forfeiture. *See United States v. Schwimmer*, 968 F.2d 1570, 1584 (2d Cir.1992) ("The *only* role of

the District Court is to amend the order of forfeiture where a genuine property interest of the sort specified in § 1963(*l*)(6) is demonstrated.") (emphasis in the original); *United States v. Lavin*, 942 F.2d 177, 187 (3d Cir. 1991) ("Those third parties who fall outside of the [limited avenues of relief], regardless of how sympathetic they are, must petition the Attorney General for relief.") If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir. 1987); S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad. News pp. 3182, 3374, 3391.

In its motions to dismiss the petitions of the trade creditors, the government argues, *inter alia*, that the petitions of IBJ, BONY, and at least one of the claims of Credit Suisse are not ripe for adjudication because they involve interests in funds not yet seized pursuant to the Court's Orders of Forfeiture. In addition, the government contends that BONY, Credit Suisse, IBJ, and Shaw, Pittman lack standing to file their petitions because they are claiming interests as general creditors and therefore are unable as a matter of law to assert the requisite legal rights, titles, or interests in specific property ordered forfeited. The government further argues that none of the four petitioners can establish that they hold vested or superior rights in property ordered forfeited as required by § 1963(*l*)(6)(A) or that they are bona fide purchasers for value of their alleged interests as required by § 1963(*l*)(6)(B).

IBJ denies that it is an unsecured general creditor of BCCI and claims to have standing as the holder of an equitable lien on all assets of BCCI, including those forfeited by this Court. IBJ further claims that its equitable lien is a vested or superior interest as re-

---

**3.** Title 18 U.S.C. § 1963(*l*)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the statute providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted these two provisions differently. Be-

cause the two subsections are identical and because of the relative dearth of caselaw interpreting and applying § 1963(*l*), the Court's opinion relies on reasoning contained in § 853(n) cases as well as in § 1963(*l*) cases.

quired by § 1963(*l*)(6)(A) and asserts that as a party to a foreign currency exchange, it is a bona fide purchaser for value as required by § 1963 (*l*)(6)(B). Credit Suisse expressly concedes that it asserts an interest as an unsecured general creditor of BCCI and claims that its petition is ripe given that it has an interest in all forfeited funds which have been seized. Credit Suisse also argues that general unsecured creditors have standing under § 1963(*l*)(2), and, like IBJ, claims to be a bona fide purchaser for value as a buyer of foreign currency. Shaw, Pittman has not denied its status as an unsecured creditor but claims to have standing and also characterizes itself as a bona fide purchaser for value. BONY has asked for a stay of resolution of its petition because it is receiving payment on its lease from the New York Superintendent of Banks and therefore cannot calculate the value of its claim. In the alternative, BONY has adopted all arguments made by Credit Suisse and IBJ in their oppositions. Because the petition of BONY, like those of the three other trade creditors, is fatally flawed as a matter of law, its request for a stay is denied.

## A. STANDING AND RIPENESS ISSUES ARISING UNDER 18 U.S.C. § 1963(*l*)(2)

The plain language of 18 U.S.C. § 1963(*l*)(2) makes clear that no petitioner has standing to recover forfeited assets unless it asserts "a legal interest in property which has been ordered forfeited." *See United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir.1987) ("[The statute] requires more than a showing of a legal interest in the debtor's property. It requires that the interest exist in the property subject to forfeiture."). This Court and most, if not all, other courts addressing the issue have recognized that an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See United States v. BCCI Holdings (Luxembourg), S.A.*, 814 F.Supp. 106, 110 (D.D.C.1993); *Schwimmer*, 968 F.2d at 1581 ("A general creditor has no interest in a particular asset or particular funds that is either vested or superior to a defendant's. He may have a right to receive payment, but he does not have a property interest superior to defendant's in any particular asset or funds. . . ."); *Campos*, 859 F.2d at 1240 (unsecured creditors who filed third-party claims "failed to allege or make a prima facie showing of any legal right, title, or interest *in the forfeited property*") (emphasis added); *Reckmeyer*, 836 F.2d at 206 & n. 3 (4th Cir.1987) ("Unlike secured creditors, general creditors cannot point to any one specific asset and claim that they are entitled to payment of the value of that specific asset. General creditors instead enjoy a legal interest in the entire estate of the debtor."); *Mageean*, 649 F.Supp. at 828 ("The Court . . . concedes the trade creditors do not, in a technical sense, have legal interests in the forfeited property."). Because general creditors are unable to assert interests in specific assets, they cannot assert legal rights, titles, or interests "in property which has been ordered forfeited" as required by § 1963(*l*)(2), at least in situations where a defendant's entire estate is not subject to forfeiture. *See Reckmeyer*, 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest . . . forfeitures."). Accordingly, given that the Court's Orders of Forfeiture reach only property located in the United States and not the entire estates of the four corporate defendants, BONY, Credit Suisse, and Shaw, Pittman, as unsecured creditors of BCCI, do not have standing to seek amendment of the Court's Orders of Forfeiture and their petitions must be dismissed.

IBJ has attempted to satisfy the requirement that a petitioner assert a specific legal interest in forfeited property by denying that it is an unsecured creditor of BCCI and claiming that it holds an equitable lien on the entirety of BCCI's forfeited property as the beneficiary of a constructive trust. As a threshold matter, the Court accepts IBJ's contention that equitable liens arising from constructive trusts generally can provide standing under § 1963(*l*)(2). Though only "*legal* interest[s]" in property which has been ordered forfeited" are recognized under the

statute, the term "legal" is ambiguous and "may be interpreted to mean 'traditionally enforceable at law,' as opposed to 'traditionally enforceable at equity,' or it may mean, 'according to the law' as opposed to 'according to what is considered just and equitable.'" *Schwimmer,* 968 at 1582. While the Court concedes that the latter interpretation may not be as "obviously" correct as the Third Circuit found it to be, *Lavin,* 942 at 185 n. 10, it nonetheless is persuaded by *Schwimmer* and the cases cited therein that "the term 'legal' in § 1963($l$) should be interpreted to mean 'under the law,'" and that beneficiaries of constructive trusts can therefore assert "legal interests" in forfeited property. *Schwimmer,* 968 at 1582.

■ Notwithstanding the above conclusion, IBJ's assertion that it holds an equitable lien on the entirety of BCCI's estate is rejected, and even were a constructive trust imposed in favor of that petitioner, it would only be placed on assets which are not yet before this Court. IBJ's first petition expressly alleges that it was to receive the funds to which it now lays claim "from the BCCI Tokyo account at BankAmerica." March 18, 1992 Petition in Support of the Claim of The Industrial Bank of Japan, Limited at 3–4. In addition, counsel for IBJ argued at the hearing on the government's motions to dismiss, "And what I can do with documents, Your Honor, is I can show you that among that pile of dollars of BankAmerica International *in the Tokyo account,* 32 million of it was mine." Tr. at 15–16 (emphasis added). Given that there has been no allegation that funds in the BCCI, S.A.—Tokyo account have been mingled with any other BCCI funds during the relevant time period, IBJ has at best a lien only on assets held in that account. *Cf.* V William F. Fratcher, *Scott on Trusts* § 515 (4th ed. 1989). Because "[t]he beneficiary of a constructive trust does not have an interest superior to the trustee's in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets," *Schwimmer,* 968 F.2d at 1583, and because no assets of BCCI, S.A.—Tokyo have yet been seized pursuant to an Order of this Court, IBJ's petitions are not ripe for review and must therefore be dismissed.[4]

## B. ISSUES RELATING TO THE SUBSTANTIVE REQUIREMENTS OF 18 U.S.C. § 1963($l$)(6)(A) AND (B)

Even were BONY, Credit Suisse, and Shaw, Pittman found to have standing under § 1963($l$)(2), none of them could be considered to have a "vested" or "superior" right, title, or interest in forfeited property as required by § 1963($l$)(6)(A). As recognized by the Second Circuit, "the categories of *vested* and *superior* are intended to cover those cases where the Court lacks jurisdiction over the property because it is not really 'property of the defendant.'" *Schwimmer,* 968 F.2d at 1581 (emphasis in the original). Because general creditors lack property interests superior to a defendant's in particular assets or funds, their asserted interests do not "undermine the court's jurisdiction over the property, and [do] not invalidate the order of forfeiture. Thus, a general creditor has no interest in particular assets or funds that warrants an amendment of an order of forfeiture under § 1963($l$)(6)(A)." *Id.*[5]

■ In addition to failing to meet all requirements of § 1963($l$)(6)(A), BONY and Shaw, Pittman cannot satisfy all prerequisites of the only other basis for court-ordered

4. It is possible that no assets of BCCI, S.A.—Tokyo will ever be brought before this Court. Paragraph 1(d) of the January 24, 1992 Order of Forfeiture provides for the forfeiture of "the balance of the liquidation estates of the Los Angeles and New York Agencies of BCCI, S.A., but not the estates themselves, upon completion of liquidation proceedings conducted by the New York banking and the California banking entities...." The BankAmerica International account of BCCI, S.A.—Tokyo was an asset of BCCI, S.A. in New York, and thus was excluded from the January 24, 1992 and July 29, 1992 Orders of Forfeiture. Although a BankAmerica International account of BCCI, S.A.—Abu Dhabi was ordered forfeited and directed to be seized, such action was taken based upon a belief that the funds contained in the account were property of BCCI (Overseas) Limited rather than of BCCI, S.A.

5. Were IBJ found to hold an equitable lien on funds before this Court, it might be able to recover its interest under § 1963($l$)(6)(A). *See Schwimmer,* 968 F.2d at 1582 ("[W]e ... hold that a constructive trust may be a superior interest under § 1963($l$)(6)(A).").

relief, § 1963(*l*)(6)(B). When defining the third parties who could recover under subsection (B), Congress used the phrase "bona fide purchaser for value," a legal term of art referring to certain buyers of tangible property. *See Lavin,* 942 F.2d at 185; *Campos,* 859 F.2d at 1238; *Mageean,* 649 F.Supp. at 829. Though some courts applying § 1963(*l*)(6)(B) or its equivalent in the Comprehensive Drug Abuse and Control Act, 21 U.S.C. § 853(n)(6)(B), have interpreted the phrase to include any person engaging in an arms' length business transaction, *see, e.g., Reckmeyer,* 836 F.2d at 208; *Mageean,* 649 F.Supp. at 829, such a broad interpretation of the phrase is inappropriate. As Justice O'Connor has noted, "a judge must presume that Congress chose its words with as much care as the judge [herself] brings to bear on the task of statutory interpretation," *FBI v. Abramson,* 456 U.S. 615, 635, 102 S.Ct. 2054, 2066, 72 L.Ed.2d 376 (1982) (dissenting opinion), and the literal language of a statute should be conclusive in the absence of a clearly expressed legislative intent to the contrary. *See Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). *See also Evans v. United States,* — U.S. —, —, 112 S.Ct. 1881, 1885, 119 L.Ed.2d 57 (1992) ("It is a familiar 'maxim that a statutory term is generally presumed to have its common-law meaning.'") (quoting *Taylor v. United States,* 495 U.S. 575, 592, 110 S.Ct. 2143, 2155, 109 L.Ed.2d 607 (1990)). Congress could easily have adopted language in § 1963(*l*)(6)(B) expressly providing protection to all parties engaged in arms' length transactions with defendants, and its failure to do so is strong evidence of a desire not to provide such a wide avenue of relief. The Senate Judiciary Committee's report on the statute does not provide persuasive evidence of a clear intent to the contrary. It is true that the report recognized that the purpose of the relation back doctrine codified at

§ 1963(c) was to "close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not '*arms' length.*'" S.Rep. No. 225, 98th Cong., 2d Sess. 200–01, *reprinted in* 1984 U.S.Code Cong. & Ad.News pp. 3182, 3383–3384 ("S.Rep.") (emphasis added). However, when the report addressed the nature of the relief available to third parties under § 1963(*l*)(6), the provision at issue here, it used narrower language and spoke only of vested or superior interest holders and "bona fide *purchasers* for value." S.Rep. at 209 (emphasis added). Accordingly, in light of the clear statutory language and the absence of an unambiguously expressed contrary intent of Congress, the phrase "bona fide purchaser for value" is interpreted to refer only to a certain class of buyers of tangible property. Because neither BONY nor Shaw, Pittman obtained their asserted interest through the purchase of tangible property,[6] they would not be entitled to relief under § 1963(*l*)(6)(B) even were they found to have standing under § 1963(*l*)(2).[7]

## CONCLUSION

For reasons stated above, it is hereby

ORDERED that the petitions filed by the following claimants on the following dates are dismissed:

**The Bank of New York,** filed March 11, 1992;

**Credit Suisse,** filed April 23, 1992;

**The Industrial Bank of Japan,** filed March 18, 1992 and September 9, 1992; and

**Shaw, Pittman, Potts & Trowbridge,** filed April 1, 1992 and September 10, 1992.

IT IS SO ORDERED.

---

6. A brief review of caselaw governing foreign currency exchanges reveals that Credit Suisse and IBJ can be considered "bona fide purchasers for value" given that money which is the subject of a currency exchange is considered to be tangible goods. *See In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 355 (2d Cir.1992). Such a conclusion is immaterial, however, in light of the finding that both parties lack standing to file their petitions.

7. This Court's Order Dismissing the April 24, 1992 and September 2, 1992 Petitions of Banco Central de Reserva del Peru, 814 F.Supp. 111 (D.D.C.1993), does not conflict with the above analysis. Because Banco Central de Reserva del Peru, as a tort claimant, could not be considered to have obtained its asserted interest even through an arms' length transaction, it was unnecessary to further define the scope of "bona fide purchaser for value" in that opinion.