**UNITED STATES of America**

v.

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.**

**Crim. Action No. 91–0655 (JHG).**

United States District Court,
District of Columbia.

Aug. 26, 1997.

U.S. Dept. of Justice, Asset Forfeiture Office, Stefan D. Cassella, Commercial Litigation Branch, Civ. Div., J. Christopher Kohn, Washington, DC, for U.S.

Richard F. Markert, Whitman & Ransom, New York City, for Claimants.

**In re First and Second Round Petitions of Hubei Provincial International Trust & Investment Corp.**

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently before the Court are the United States' motions to dismiss the First and Second Round Petitions of the Hubei Provincial International Trust & Investment Corporation ("Hubei"), which were filed pursuant to 18 U.S.C. § 1963(*l*) (1994).[1] For the reasons stated below, the motions to dismiss will be granted.

### Background

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the instant motions to dismiss Hubei's L–Claims.[2] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5, 1991, banking regulators in the United Kingdom, Luxembourg and the United States,

1. The petitions will be referred to herein, respectively, as "First Round L–Claim" and "Second Round L–Claim" or collectively as the "L–Claims."

2. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

froze assets owned or controlled by BCCI. In New York, the Superintendent of Banks seized BCCI's assets at various New York banks, including those at Security Pacific International Bank ("SPIB"). By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. See Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates). Attached to the First Order of Forfeiture (filed January 24, 1992), as amended, was a list of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Included among the assets seized was an account in the name of BCCI (Overseas) Ltd. ("BCCI(O)"), Shenzhen branch, at the New York office of SPIB, which account was numbered 04031016 and had a credit balance of US$589,044.22. In a

later amendment to the First Order of Forfeiture, the Court issued the Second Supplemental Order of Forfeiture ("Second Order of Forfeiture") on July 29, 1992, directing the seizure of additional BCCI assets. In contrast to the First Order of Forfeiture, the Second Order of Forfeiture included no assets of BCCI(O)'s Shenzhen branch among those seized at SPIB or elsewhere.

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement, forfeited assets were to be disbursed in equal amounts to the Worldwide Victims Fund and the U.S. Fund. See Plea Agreement ¶ 11(c). The broad purpose of the Worldwide Victims Fund, operated by the Court–Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of countries subscribing to recognized norms of international justice." Id. ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addition to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of CenTrust, if any." Id. ¶ 12(f). As a result of BCCI's guilty plea and the subsequent criminal forfeiture proceedings, by July 1996 the United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5

(F.D.C.H.).[3]

Because this matter is before the Court on the government's motion to dismiss, the facts alleged by the petitioner are assumed true and the petitioner receives all reasonable inferences. Hubei, a corporation organized under the laws of the People's Republic of China, maintained U.S.$1,940,782.12 in an interest-bearing time deposit account with BCCI(O) which matured on July 5, 1991.[4] On July 3, 1991, Hubei directed BCCI(O) to transfer, for value on July 5,1991, $1,031,-913.19 of the amount then on deposit with BCCI(O) to the Bank of America, San Francisco, for credit to an account held by the Agricultural Bank of China ("Agricultural Bank"). *See* Verified Pet. ¶ 5 & Ex. B. On July 4th, BCCI(O) confirmed Hubei's instruction of July 3rd and debited Hubei's account accordingly. *See id.* ¶ 7 & Ex. D. On July 5th, pursuant to Hubei's instructions, BCCI(O) issued a payment order to SPIB in the amount of $1,031,913.19, payable from Hubei's BCCI(O) Shenzhen branch account to SPIB in the favor of the Bank of America for further credit to the account of the Agricultural Bank. *See id.* ¶ 4 & Ex. C. Although SPIB received BCCI(O)'s payment order, it never issued a payment order to the Bank of America due to the regulatory intervention on July 5, 1991, in which all of BCCI's assets in the United States, including those at SPIB, were frozen. *See id.* ¶¶ 7–8 & Ex. E.[5]

On January 24, 1992, this Court entered the First Order of Forfeiture, which included $589,044.22 held in the BCCI(O) Shenzhen branch account # 04031016. On January 31, 1992, the Court amended the First Order of Forfeiture, and, on July 29, 1992, the Second Order of Forfeiture was entered. Neither the amendment to the First Order nor the Second Order of Forfeiture included any assets of BCCI(O) Shenzhen branch.

Through a timely filed Verified Petition, Hubei has asserted a claim to "to the assets of BCCI Shenzhen that have been so forfeited, to the extent of $1,031,913.19, plus interest thereon from July 5, 1991." First L–Claim ¶ 10. After the Court entered the Second Order of Forfeiture, Hubei timely filed a second Verified Petition, identical in material respects, asserting a second claim to BCCI(O)'s assets in the same amount, US$1,031,913.19. Second L–Claim ¶ 10. Although Hubei did not identify specific assets seized pursuant to the Second Order of Forfeiture in which it had an interest, it contends that

> Upon information and belief, pursuant to one or more Orders issued by the United States District Court for the District of Columbia, the assets of BCCI Shenzhen and of BCCI Overseas were condemned and forfeited subject to the rights of persons or entities having a legal right, title or interest therein.

Second L–Claim ¶ 9.

The United States later filed the instant motions to dismiss. As to both L–Claims,

---

3.  In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. *See* Notice to the Court at 1 (filed Aug. 13, 1996). On August 1, 1996, the United States disbursed an additional $83,651,-863.24, *id.* at 2, and, on May 22, 1997, Attorney General Janet Reno "determined that the United States would transfer 100 percent of its share of the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis." Notice to the Court at 2 (filed July 11, 1997).

4.  According to Hubei, this account had a balance of US$1,943,450.70 (principal and interest as of July 5, 1991). Through the instant L–Claims, however, Hubei seeks recovery of only $1,031,-913.19 of that sum. And, it is undisputed that only $589,044.22 was seized from BCCI(O)'s account at SPIB. Hubei cannot explain the disparity between what it believed it had on deposit and what was actually found credited to Hubei's account on BCCI's books. *See* Pet. Opp. to Motion to Dismiss First L–Claim at 3 n. 3, Pet. Opp. to Motion to Dismiss Second L–Claim at 2 n. 2.

5.  The relevant communication to Hubei from SPIB states, in relevant part:

    > Re: Your Telex of 15 Feb. 1992, REF. FB920023 USD 1,013,913.19 Transfer B/O BCCI Shenzhen
    > 1. We confirm receipt of payment instructions from BCCI Shenzhen on 5 July 1991 for USD 1,013,913.19 as noted in your telex. This payment was not made.
    > 2. The proceeds of the BCCI Shenzhen account were turned over to the United States Government pursuant to an /Order of Forfeiture/ issued bt (sic) a U.S. Court. We would suggest that you contact the U.S. Deparment (sic) of Justice for further information regarding this matter.

the government argues that Hubei lacks standing to assert a claim, because it is a general unsecured creditor of BCCI. On the merits, the government contends that the petitioner has failed to state a claim upon which relief can be granted because Hubei lacks a legal interest in a specific asset as required by 18 U.S.C. § 1963(*l*)(6)(A), and it is not a bona fide purchaser for value under 18 U.S.C. § 1963(*l*)(6)(B). Additionally, as to the Second L–Claim, the United States contends that Hubei's petition fails because no BCCI(O) Shenzhen branch property in which Hubei alleges an interest was seized pursuant to the Second Order of Forfeiture.

## Discussion

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963,[6] which sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18 U.S.C. § 1963(*l*)(2).[7] Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

If, after the hearing, the court determines that the petitioner

has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole

or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

18 U.S.C. § 1963(*l*)(6).

A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Pacific Bank)*, 956 F.Supp. 5, 10 (D.D.C.1997); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of BCCI(O) Foreign Branches)*, 833 F.Supp. 32, 36 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Chawla)*, 833

6. 18 U.S.C. § 1963(a) provides, in relevant part:

Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—
    (1) any interest the person has acquired or maintained in violation of section 1962;
    (2) any—
    (A) interest in,
    (B) security of,
    (C) claim against; or
    (D) property or contractual right of any kind affording a source of influence over;
any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
    (3) any property constituting, or derived from, any proceeds which the person has ob-

tained directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
The court, in imposing sentence on such person shall order ... that the person forfeit to the United States all property described in this subsection.

7. This provision provides:

Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer*, 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin*, 942 F.2d 177, 187 (3rd Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir. 1987).

In resolving a motion to dismiss, the Court assumes true, as she must, the facts alleged by the petitioner in its L–Claims. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kenneda v. United States*, 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court construes the complaint liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications*, 16 F.3d 1271, 1275 (D.C.Cir.1994).

■ Section 1963(*l* )(2) requires a party to assert "a legal interest in property forfeited to the United States" to have standing. This requirement is imposed to further the purpose of an L–Claim proceeding, which, while ancillary to the underlying criminal case, is intended to ensure that property forfeited to the United States was that of the defendant; it does not attempt to divide the defendant's estate among competing claimants. *See United States v. BCCI Holdings (Luxembourg), S.A. (In re Petition of General Creditors)*, 814 F.Supp. 106, 110 (D.D.C.1993).

This latter task is properly performed at a liquidation proceeding, where all parties without a "legal interest" in forfeited property can recover on a *pro rata* basis with the many other claimants to the debtor's estate. *Id.* at 111; *see Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754 (10th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *First Empire Bank–New York v. F.D.I.C.*, 572 F.2d 1361 (9th Cir.1978), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

■ The critical inquiry in an L–proceeding is, therefore, ownership of the disputed funds. As recognized by this Court and most, if not all, other courts addressing the issue, an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See In re Petition of Chawla*, 46 F.3d at 1191; *In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also Schwimmer*, 968 F.2d at 1581; *Campos*, 859 F.2d at 1240; *United States v. Reckmeyer*, 836 F.2d 200, 206 & n. 3 (4th Cir.1987); *Mageean*, 649 F.Supp. at 828. Because a general creditor is unable to assert an interest in a specific asset, it cannot assert a legal right, title, or interest "in property which has been ordered forfeited" as required by § 1963(*l* )(2), at least in situations where, like here, a defendant's entire estate is not subject to forfeiture. *In re Petition of Chawla*, 46 F.3d at 1191; *see Reckmeyer*, 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest … forfeitures."). Accordingly, absent a showing of an interest in a specific asset, Hubei would lack standing to assert a claim in these L-proceedings.

■ Examined in this light, the L–Claims must be dismissed. As to the Second L–Claim and a portion of the first, the dismissal will be due to a lack of jurisdiction. The only asset of BCCI(O) Shenzhen branch's that is properly before this Court, is the sum of US$589,044.22, which was seized in account 04031016 pursuant to the First Order of For-

feiture. Since no BCCI(O) Shenzhen branch assets were seized pursuant to the Second Order of Forfeiture, Hubei's Second L–Claim will be dismissed due to lack of jurisdiction. *United States v. BCCI Holdings, et al. (In re Petition of Khawaja Qadeer Ahmed)*, 923 F.Supp. 264, 265 (D.D.C.1996). Similarly, to the extent Hubei's First L–Claim seeks BCCI(O) Shenzhen branch assets beyond those funds seized pursuant to the First Order of Forfeiture, it also will be dismissed due to a lack of jurisdiction. *Id.*

■ The remaining portion of Hubei's First L–Claim asserting a right to US$589,-044.22, which was, in fact, seized pursuant to the First Order of Forfeiture, stands on a slightly different footing. However, the bottom line is no different. Hubei has simply failed to allege sufficient facts for the Court to find that the funds constituted a "special deposit" in order to establish a cognizable interest; it has failed to allege that its asserted interest was vested or superior "at the time of the commission of the acts which gave rise to the forfeiture" under Section 1963(*l*)(6)(A); and it has failed to allege facts supporting the specific elements of Section 1963(*l*)(6)(B). Such failures are fatal. *See In re Petition of Pacific Bank*, 956 F.Supp. at 10; *In re Petition of Chawla*, 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *Campos*, 859 F.2d at 1240; *United States v. Mageean*, 649 F.Supp. at 825.

■ Deposits are, of course, presumed to be general and Hubei carries the burden to demonstrate otherwise (a pleading burden which, at this stage, requires only that it allege sufficient facts). Once a deposit is accepted by a bank, it becomes part of the general deposits of that bank, and the transferee becomes a general creditor of the bank. *See In re Petitions of General Creditors*, 814 F.Supp. at 109–10, 5A Michie on Banks and Banking § 1, at 1–15 (1994 Repl. Vol.) (citing cases). At that point, the bank acquires an ownership interest in the transferred funds and the transferee acquires a cause of action against the bank. Such a cause of action is not a "legal interest" in the forfeited property, but a claim against the estate of the bank. *In re Petition of Chawla*, 46 F.3d 1185, 1191 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *In re Petitions of General Creditors*, 814 F.Supp. at 109–10.

Time deposits in interest bearing accounts, like those that Hubei deposited with BCCI(O) Shenzhen branch, are presumed to be general deposits. *See* 5B Michie on Banks and Banking § 313, at 385 (1991 Repl. Vol.) (citing cases). "A 'certificate of deposit' is, in effect, a loan to a bank by the depositor for an agreed period of time." *Id.* at 381. Hubei has not alleged that BCCI(O) was under an obligation to segregate the funds deposited by Hubei, and BCCI(O) Shenzhen branch paid interest on those deposits—both of which are strong indicia of general deposits. *See Peoples Westchester Sav. Bank v. FDIC*, 961 F.2d 327, 330 (2nd Cir.1992); *In re Petitions of General Creditors*, 814 F.Supp. at 109–10. Here, Hubei has not alleged that its time deposit with BCCI(O) was a special deposit, but it does admit that BCCI(O)'s payment order to SPIB was never accepted. Because this New York-based transaction was governed by Article 4A of the New York Uniform Commercial Code ("N.Y.U.C.C."), that transaction did not, as a matter of law, transfer title of the funds on general deposit from Defendant BCCI(O) to SPIB. *See* N.Y.U.C.C. § 4A–104(a).

Instead, Hubei argues that SPIB's non-acceptance of the payment order is irrelevant because, on July 3, 1991, by instructing BCCI(O) to transfer a portion of the funds in its account, it created a special deposit. According to Hubei, "it was the peculiar combination of the termination of the time deposit coupled with the transfer instruction" of July 3, 1991, that transformed its general deposit with BCCI(O) into a special deposit:

> [A]t the time that Hubei's time deposit matured the instruction to effect the transfer of funds to Bank of America was tantamount to the withdrawal of money from Hubei's account at BCCI on general deposit and the redeposit of those same funds into an account on special deposit.

From that moment on the debtor/creditor relationship between BCCI and Hubei terminated, and a new bailor/bailee relationship commenced in which Hubei retained a right, title and interest in the funds to be wired or their equivalent.

Hubei's Mem. in Opp. to Government's Motion to Dismiss First Verified Pet. at 8 (footnote omitted).

On the facts alleged, Hubei's argument is unpersuasive. While it is true that banking law in the United States recognizes that a general deposit can be changed into a special deposit, *see* 5B Michie, *supra* § 328, at 429–32 (citing cases), the petitioner alleges only that it directed BCCI(O) to transfer a portion of the funds in Hubei's account. Because payment orders like this are also issued with respect to general deposits, 5A Michie, *supra* § 1, at 36–39, a mere instruction to pay another, standing by itself, does not (and cannot be) sufficient to demonstrate the mutual intent necessary to convert a general deposit to a special account. Moreover, where the previous longstanding deposit was a general deposit, changing it to a special deposit must be based on a clear direction. *See* 5B Michie, *supra* § 328, at 432. Stated differently, a simple instruction to remit a sum is ambiguous and therefore not sufficiently clear to demonstrate the necessary mutual agreement between a bank and a depositor that specific assets were to be set aside for a specific purpose or to establish circumstances sufficient to create an agency or trustee relationship. The pre-wire transfer authority upon which Hubei relies to argue by analogy is easily distinguished and/or unpersuasive.

Additionally, putting aside Hubei's lack of standing as a general depositor (and a general creditor) of BCCI(O), it has pled no facts in its L–Claims that indicate or support a reasonable inference that its alleged interest was either vested or superior at the time BCCI committed the acts which led to the forfeiture. Nor has Hubei alleged facts that indicate that it was reasonably without cause to believe that the property at issue was subject to forfeiture. Such facts are necessary to establish *prima facie* standing.

Since Hubei has failed to meet its pleading burden by identifying a cognizable right, title or interest in a specific asset, its claims are defective on the merits. Moreover, its claim under § 1963(*l*)(6)(B) is flawed simply because there has been no purchase of tangible property. The plain language of the statute protects only bona fide *purchasers* for value. *United States v. BCCI Holdings, Inc. (In re Petition of American Express Bank, Ltd.)*, 961 F.Supp. 287, 295 (D.D.C.1997); *United States v. BCCI Holdings, Inc. (In re Petition of Pacific Bank)*, 956 F.Supp. 5, 13–14 (D.D.C.1997); *United States v. BCCI Holdings Inc., (In re Petitions of Trade Creditors)*, 833 F.Supp. 22, 28 (D.D.C.1993), *aff'd*, 48 F.3d 551 (D.C.Cir.), *cert. denied sub nom. Liquidation Comm'n for BCCI (Overseas) Ltd., Macau v. United States*, —— U.S. ——, 116 S.Ct. 563, 133 L.Ed.2d 489 (1995). When defining the third parties who could recover under subsection (B), Congress used the phrase "bona fide purchaser for value," a legal term of art referring to those who purchase tangible property. *See Lavin*, 942 F.2d at 185; *Campos*, 859 F.2d at 1238; *Mageean*, 649 F.Supp. at 829. This Court has consistently construed this phrase to be limited to such purchasers. *See, e.g., In re Petition of American Express Bank*, 961 F.Supp. at 295; *In re Petition of Trade Creditors*, 833 F.Supp. at 28. Because the petitioner here did not obtain its alleged interests through the purchase of tangible property, it would not be entitled to relief under § 1963(*l*)(6)(B) even had the Court determined that it had standing under § 1963(*l*)(2).

Accordingly, the government's motion will be granted, and the L–Claims will be dismissed.

### Conclusion

For the reasons stated above, it is hereby

**ORDERED** that the United States' motions to dismiss are granted and Hubei's L–Claims are dismissed. Judgment will be entered separately in accordance with Fed. R.Civ.P. 58.

IT IS SO ORDERED.